JONES v. CLARK ET AL.

CONDITIONAL SALES.

The condition of a sale and delivery of personal property that title shall not vest in the purchaser until payment of the price is valid as against those who purchase the same with notice of the condition, and creditors who become such with knowledge of the vendor's rights, and where no false credit has been induced by the ostensible ownership and possession of the vendee. *George v. Tufts*, 5 Colo. 162, overruled.

*Error to the County Court of Pitkin County.*

THE facts upon which the question presented for our consideration upon this review arose are in brief as follows: Clark and Denman, the defendants in error, brought an action against Samuel Fickes and Samuel Bennett to recover for goods, wares and merchandise sold and delivered, sued out a writ of attachment and levied upon one " engine 'Reliable' No. 78; one ' Bay State ' boiler, thirty-five horse power; one No. 2 ' Dixie ' sawmill and attachments, including saws and all sawmill attachments; one inspirator," as the property of Samuel Bennett, and being at the time of levy in his possession. In that action A. E. Jones, plaintiff in error, intervened, claiming to be the owner of the property.

Upon the trial of this intervention, the uncontradicted evidence discloses that prior to the 15th day of October, 1890, Jones was the owner of the property, and on that date sold the same to Fickes & Bennett under the following agreement:

" This agreement, made the 15th day of October, A. D. 1890, between A. E. Jones, of Aspen, Colorado, and S. Fickes and S. Bennett, of the same place,

" Witnesseth, That whereas the said Fickes & Bennett have a sawmill and appurtenances, consisting of one engine, ' Reliable ' No. 78; one ' Bay State ' boiler, thirty-five horse power; one No. 2 ' Dixie ' sawmill and attachments, includ-

ing saws and all sawmill attachments; one inspirator, the property of A. E. Jones, in their possession—

"Now, for and in consideration of the sum of $1 to him in hand paid, the said Jones agrees to sell and deliver the same to said Fickes & Bennett for the sum of $1,513.50, to be by them paid therefor, and which sum they agree to pay therefor to said Jones in installments, and the said Fickes & Bennett hereby agree that no title to any part of said property shall vest in them by reason of any payments made on account thereof until the entire purchase price shall be fully paid, and that in case of their failure fully to pay said purchase price, any part payments made on account thereof shall become and be forfeited to the said A. E. Jones, as rent for the use of said property by the said Fickes & Bennett, and that, until paid for, they hold and will hold the same as the agents of the said A. E. Jones.

"The purchase price the said Fickes & Bennett promise and agree to pay in full on or before the 15th day of April, 1891.

"Upon the payment of said purchase price in full, the said Jones shall and hereby agrees to deliver to said Fickes & Bennett or their assigns a bill of sale of said property and every part thereof.

"In witness whereof," etc.

There was evidence introduced tending to show that prior to giving the credit for the merchandise sued for in the original action, Clark & Denman were notified by Jones of the terms upon which Fickes & Bennett had purchased the engine, boiler, etc., and that he, Jones, claimed the mill as his own until it was paid for according to the terms of the agreement. The court disregarded this testimony and held that "as a matter of law, it is immaterial whether the plaintiffs, before giving credit to Fickes & Bennett, had notice of the contract and conditions under which the intervenor delivered the property in question. * * * That notice to said plaintiffs being immaterial, the plaintiffs are entitled to hold said property as against the intervenor;" and rendered judg-

ment in favor of plaintiffs and dismissed the petition of intervention at the costs of intervenor.

To reverse this judgment intervenor prosecutes this writ of error.

Messrs. WILSON & SALMON, for plaintiff in error.

Mr. CHARLES R. BELL and Mr. D. J. HAYNES, for defendants in error.

MR. JUSTICE GODDARD delivered the opinion of the court.

It being conceded that Fickes & Bennett held possession of the property in question by virtue of the agreement of sale above set forth, and had not paid the agreed consideration therefor, the sole question presented by the record is whether a conditional sale of this character can be upheld as against a creditor of the vendee, who becomes such with full knowledge of its terms. There would be no difficulty in answering this question were it not for the former decisions of this court. In the case of *George v. Tufts*, 5 Colo. 162, conditional sales of this kind are held to be "constructively fraudulent as to creditors, and the property, so far as their rights are concerned, is considered as belonging to the purchaser holding the possession;" and that notice of the lien does not affect the right of creditors; while in the later case of *Gerow v. Castello*, 11 Colo. 560, it was expressly held that a conditional sale was good as against a purchaser with notice. The rules announced in these cases are so at variance as to leave the law of this state upon the subject of conditional sales in doubt and uncertainty; and it devolves upon us in this case, since the question of the validity of a conditional sale as against one who purchases the property, or a creditor who gives credit to the vendee with notice of its terms, is directly presented, to settle this doubt and determine what rule shall obtain in this jurisdiction.

The latter case is in accord with the current of authority

in England and in this country, and in effect overrules the former decision in *George v. Tufts, supra.* But the court, in pronouncing the opinion, omits any mention of that case; and since the doctrine announced therein is predicated upon several Illinois decisions and follows the exceptional doctrine of the courts of that state, upon the theory that it is based upon and grew out of peculiar statutory provisions in relation to chattel mortgages similar to our own, which changed the common law and inhibited sales of this character, it becomes important to examine the cases so relied on and determine if the assumption of the court in this respect was well founded. They are *Murch v. Wright,* 46 Ill. 468; *McCormick v. Hadden,* 37 Ill. 370; *Ketchum v. Watson,* 24 Ill. 591; *Hervey et al. v. R. I. L. Works,* 93 U. S. 664.

The case of *Murch v. Wright* involved the construction of an instrument in the form of a lease for a piano. The court held that the transaction, although in the form of a lease, was a conditional sale of the piano; also, that it was " a contract ˙ legal and valid as between the parties, but made with the risk on the part of the vendor of losing his lien in case the property should be levied upon by creditors of the purchaser while in the possession of the latter," citing in support of the proposition thus announced, *Jennings v. Gage,* 13 Ill. 610; *Brundage v. Camp,* 21 Ill. 330; *McCormick v. Hadden,* 37 Ill. 370. No mention is made of the chattel mortgage act, nor do either of the cases cited involve consideration of a chattel mortgage, nor in fact a conditional sale. The question at issue in *Jennings v. Gage* was whether certain goods were delivered with the consent of the vendor. The facts were : Gage, Dater & Massey, merchants of the city of New York, sold to Van Valin a bill of goods, taking in payment his notes at four, six and nine months, secured by a mortgage on real estate in Wisconsin, the goods to be shipped to Chi-cago, but not to be delivered to Van Valin until he gave an indorser on the notes satisfactory to J. H. Burch. The goods were forwarded to Van Valin, care of James Peck & Company, warehousemen, who were instructed by Burch not

to deliver them without instructions from him. Van Valin, however, paid the charges and obtained possession of the goods without giving the indorser, and subsequently sold them to Jennings. Gage et al. brought an action of trover against Jennings for their value and recovered judgment. The judgment was reversed for error in the instructions given to the jury. The court say:

" The questions of law arising upon the other instruction, and the qualification annexed, are of a different character. That instruction is based on the supposition that Jennings was a purchaser of the goods in good faith and for a valuable consideration. Whether the evidence would have justified the jury in finding that he was such a purchaser is not now the question. The good faith of the transaction was a matter peculiarly appropriate for the consideration of the jury, and as such the defendant had the right to have it submitted to and passed upon by them. * * * Does the instruction, as qualified by the court, exclude the idea of Van Valin having obtained possession of the goods by the consent of plaintiffs? If it does, the instruction was correct; otherwise it was erroneous. A moment's consideration will show that all the facts stated hypothetically in the qualification may be true, and still Van Valin may have got the possession of the goods temporarily, by the consent of the plaintiffs. * * * Under such circumstances, a *bona fide* purchaser from Van Valin would be protected."

In *Brundage v. Camp*, the facts were: Brundage sold two mules to one Crouch, and delivered them upon the promise of Crouch that he would give a note with security on a certain day. Relying on this promise, Brundage delivered the mules, saying that if the note and security was given on Monday, the mules should be his. Crouch failed to give the note and security, and afterwards sold the mules to Camp, who had no notice of the arrangement between Brundage and Crouch. Brundage brought an action of replevin against Camp to recover possession of the mules. Breese, J., speaking for the court, says:

"Here then was an unconditional delivery. It did not depend, and could not depend, on the giving a note and security at a future day, for the delivery was *in præsenti* and absolute, qualified by nothing—by no condition."

And, after discussing the authorities upon the general question of conditional sales, he further says: " Now, in this case, the plaintiff, with the intention of selling, voluntarily parted with the mules on the deceitful promise of Crouch to furnish the note and security. The plaintiff put Crouch in full possession of the property, clothed him with the strongest marks of ownership of such property, enabling him to thereby commit the fraud, which he did commit by the sale to the defendant, who is a *bona fide purchaser* for a fair price. * * * There is no pretense in this case that Camp, before his purchase, had any notice whatever of this secret claim of Brundage on the property. He is to all intents and purposes a purchaser in good faith for a valuable consideration, and without notice of any liens on the property."

In *McCormick v. Hadden*, also cited in *George v. Tufts*, it appears Gilbert Hadden had purchased a span of horses from George M. Hadden, and they were delivered to him, under an agreement that he was to give a chattel mortgage as security for the purchase money. This he failed to do. About a year afterwards Gilbert Hadden gave a chattel mortgage on the horses to McCormick as security for the purchase price of a reaper. After the reaper was delivered and the mortgage given to McCormick, George M. Hadden took the horses away. Thereupon McCormick brought an action of replevin and recovered their possession. If support is found in these decisions for the rule announced in *Murch v. Wright*, it is only to the extent that, under a conditional sale, the vendor's title cannot be asserted against an *innocent purchaser*.

The case of *Ketchum v. Watson* was decided upon the following facts: Watson sold a horse to Outlaw for $80.00, took his note for the amount, and delivered the property. Outlaw, not being able to pay the note, it was afterwards agreed that the sale should be rescinded; that Watson should

destroy the note and Outlaw should keep the horse, and if he paid Watson by the first of February following, then he was to own the horse. If he did not pay at that time, it was to be Watson's property. The court say: " The sale to Outlaw of the horse in question, made in August, 1859, was perfected by delivery to him. His title was then complete. The resale by Outlaw to Watson, in October following, was not perfected by delivery, nor was there any change of possession. The title, therefore, did not pass. To pass the title as between third persons, there must be a change of possession, so that others may not be deceived and defrauded by the appearance of ownership in one, while the title is really in another."

The court adds the remark: " The whole transaction is in fraud of the chattel mortgage act." We are unable to see what relation this remark could have to the facts in the case, the question decided being that a sale of personal property without delivery did not pass the title and would not be valid as against creditors, not by reason of any contravention of the chattel mortgage act, but because it was against the policy as established in that state, and would have been invalid here by virtue of our statute of frauds, and is like in principle to the case of *Cook v. Mann*, 6 Colo. 21.

The case following this in the same volume, being an action between Ketchum and another Watson, is a case more in point upon the question involved in the case of *George v. Tufts*, and upon the question before us. The plaintiff asked this instruction, which the court gave:

" If the plaintiff sold Outlaw a horse, conditioned that it should not be his property until paid for, and that Ketchum was cognizant of such contract, they will find for plaintiff, unless the property was in possession of Outlaw, and the indebtedness accrued to Ketchum before such notice, and while Outlaw had said horse in his possession ; and if such be the case you will find for defendant.

" We think the court erred in giving it without this mate-

rial qualification, namely, that Ketchum was cognizant of the contract before he gave credit to Outlaw.

" This view rendered it necessary that the court should have given the third instruction asked by defendant, that unless they believe from the evidence that Ketchum had notice of the sale to Outlaw before he purchased the notes, they will find for defendant. It was error to refuse this instruction."

The only other case cited is *Hervey v. R. I. L. Works*, 93 U. S. (3 Otto) 671, an action which originated in the state of Illinois, and involved the validity of a conditional sale of locomotives,,and.was determined by the law as it was previously decided by the courts of that state. The court say :

" The policy of the law in Illinois will not permit the owner of personal property to sell it, either absolutely or conditionally, and still continue in the possession of it. * * * The courts of Illinois say that to suffer, without notice to the world, the real ownership to be in one person and the ostensible ownership in another, gives a false credit to the latter, and in this way works an injury to third persons."

The court speaks of the policy of the law as declared by the courts of Illinois, and does not deny the right of a vendor to make a conditional sale of personal property because of any statutuory limitation, but because of the adoption by those courts of the principle that it was against public policy to permit a transfer and delivery of the possession of personal property clothed with a secret lien, and thereby enable the ostensible owner to induce false credit on the strength of his possession.

Neither in this case, nor in any of the Illinois cases that we have been able to find, is any support found for the proposition announced in *George v. Tufts*,— that notice of a lien did not affect the rights of creditors. It is true the Illinois courts did so hold in the cases cited to this proposition, to wit, *Frank v. Miner*, 50 Ill. 447, and *Porter v. Dement*, 35 Ill. 478 ; but those were cases where a chattel mortgage had been given and was defective in failing to comply with the

statutory requirements — a proposition not in any way involved in *George v. Tufts*, nor in any manner analogous to it.   In this respect the court not only misapprehended the effect of the Illinois decisions, but went far beyond them; and we are unable to find in those cases any construction of a chattel mortgage act that we feel bound to follow and accept by reason of the adoption of that statute by our legislature.   Nor do we feel bound to follow the doctrine of those decisions any further than they may meet our approval as the correct annunciation of principles of general jurisprudence.   The question of a conditional sale was before the supreme court of the United States subsequently in *Harkness v. Russell*, 118 U. S. 663, a case that originated in the territory of Idaho, where there existed a law relating to chattel mortgages, and in the transaction in question they had made no effort to comply with that law.   Judge Bradley, in an elaborate opinion, after referring to the authorities upon this subject, both English and American, sustained the sale, both upon reason and authority.   Speaking of the Illinois cases, he said :

" The law has been held differently in Illinois, and very nearly in conformity with the English decisions under the operation of the bankrupt law.   The doctrine of the supreme court of that state is, that if a person agrees to sell to another a chattel on condition that the price shall be paid within a certain time, retaining the title in himself in the meantime, and delivers the chattel to the vendee so as to clothe him with the apparent ownership, a *bona fide* purchaser or an execution creditor of the latter is entitled to protection as against the claim of the original vendor. * * * We do not mean to say that the Illinois doctrine is not supported by some decisions in other states.   There are such decisions ; but they are few in number compared with those in which it is held that conditional sales are valid and lawful, as well against third persons as against the parties to the contract. * * * It is only necessary to add that there is nothing either in the statute or adjudged law of Idaho to prevent, in this case, the

operation of the general rule, which we consider to be established by overwhelming authority, namely, that, in the absence of fraud, an agreement for a conditional sale is good and valid, as well against third persons as against the parties to the transaction; and the further rule, that a bailee of personal property cannot convey the title, or subject it to execution for his own debts, until the condition on which the agreement to sell was made has been performed."

The rule announced in *Gerow v. Castello, supra,* is not only sustained by the great weight of authority, but is also founded upon the better reason, and in adhering thereto we place ourselves in line with the general current of authority. It is certainly equitable and can in no instance work a hardship to third parties to uphold conditional sales of personal property as valid against those who purchase the same with notice, and creditors who become such with knowledge of the vendor's rights, and where no false credit has been induced by the ostensible ownership and possession of the vendee.

In this view of the law, it was a material inquiry before the trial court whether the defendants in error had notice of the conditions upon which Fickes & Bennett purchased the property in question, and the court erred in disregarding the testimony introduced upon that question. For this reason the judgment will be reversed and the cause remanded.

*Reversed.*

Messrs. Wilson & Salmon, for plaintiff in error.

