BUNTE ET AL. v. WILSON, SHERIFF.

1. EVIDENCE.
Verbal admissions by one who had been the owner of personal property that he had sold it are admissible against him in an action by him to recover it from an officer who had levied upon it as the property of the alleged purchaser, and in connection with proof of delivery and retention of possession, and of a written agreement to sell, sufficient to establish the fact of a sale.

2. PERSONAL PROPERTY—EVIDENCES OF TITLE.
Parties are not at liberty to deal with their property in such way as to give an apparent vendee control, possession and credit on the faith and strength of the title, and then insist a title has not been passed.

*Appeal from the District Court of Park County.*

Mr. ALFRED MULLER, for appellants.

Mr. AUGUSTUS PEASE and Mr. A. S. BLAKE, for appellee.

BISSELL, J., delivered the opinion of the court.

Bunte & Christensen brought replevin to recover a sawmill and its appurtenances, which had been seized in an attachment suit brought by Davis as a creditor of Cora McLean. For some time prior to January, 1893, the firm had been running this sawmill on Elk creek in Park county, manufacturing lumber for the market. Early in January, Bunte, on behalf of his partnership, entered into negotiations with D. C. McLean, the husband of Cora, looking to the sale of the mill to Mrs. McLean. About the 8th of January, Bunte and McLean went to the locus of the mill, inspected it, and made some arrangement about the sale of the property. What occurred must be stated with some particularity, since the principal point urged on the appeal is there was no evidence to show a transfer of title or a sale of the property to the McLeans. It is insisted the whole thing depends on admissions which do not prove a transfer of title. We are without any evidence of the transaction, except as it is stated by Bunte, other than the statements which he made to Davis and the foreman, Elliott, regarding the deal. After the property had been looked over, Bunté stated to Davis that he had sold the property to McLean, who would thereafter operate it. At this time Davis was running a boarding house, keeping the men who were employed about the mill. Davis was told by Bunte he was no longer to work for him, but his arrangement must be made with McLean. This is not an exact statement of the testimony, but it is substantially the effect of it. During this time Elliott, who had been in the employ of the firm, was called out by Bunte and informed that McLean wanted him, and told by Bunte, "I have sold the mill to McLean, and he wants you." At the same time McLean said to Elliott, " I have paid a big price for that property, a thousand dollars in all; I will give you three and a half a day to take charge immediately." Thereupon Elliott

and Bunte's foreman invoiced the property and Elliott started up the mill and run it for McLean.   He continued for about six months with no other knowledge of the situation and no other statement from either McLean or Bunte about it.   To farther sustain his case, the defendant produced a written agreement signed by the firm and by Bunte, whereby the concern agreed to sell the property to Mrs. McLean at a fixed price, to be paid for in a way named.   It further provided for the execution of a bill of sale on the completion of the payments.   The force of this agreement was sought to be overcome by Bunte's testimony, who swore that a day or so after its execution McLean receded from his bargain, and it was then agreed that McLean should continue in possession as a tenant of the firm, with a lease of the mill at a fixed rental.   This agreement was not in writing, nor was there evidence of it other than that which Bunte gave.   Bunte explained the failure to cancel the original contract by stating that it was agreed it should be destroyed and that McLean should occupy under the parol letting.   McLean was not produced as a witness.

The appellant recognizes the general rule respecting the force of the findings of the trial court on questions of fact where the evidence is in conflict, and in reality does not insist on a reversal of the case because the judgment was against the evidence, but rather on the basis of a lack of evidence to show any transfer of title.   With much ingenuity and some logic he attempts to apply the general doctrine that verbal admissions do not constitute proof of a fundamental fact, which must be established in order to enable the suitor to recover.   It is insisted that they are always to be received subject to the limitation that the party who produces them is not thereby relieved from the necessity of making the more formal proof of the facts on which his recovery must rest.   We do not appreciate the necessity to enter into a discussion of this nice question, or to indicate what we might hold if the admissions alone were the only matters on which the recovery depended.   We discover proof of many other

facts which the court had a right to consider in reaching his conclusion. The admissions, of course, are of very considerable force when taken as explanatory of the acts which were established. The parties went to the location of the property, and, having examined it, proceeded, according to their statements, to make a sale and transfer of it from the owner to the vendee. If we should concede that Bunte's statements that he had sold it were not enough to establish a transfer of title, we may yet consider the putting of the party into possession as a very strong circumstance from which the sale might be deemed established. Where the owner of property declares that he sells it to one whom he puts immediately into possession, this act is wholly inconsistent with any other theory than that of a transfer of title. Elliott's employment is another strong circumstance which tends to confirm an actual transfer. He had been in the employ of the firm, which employment terminated at that time. He was hired by McLean in Bunte's presence at a fixed wage, and the property was turned over to him to operate on McLean's account and on the basis of a sale of the property from the firm to Mrs. McLean. This is likewise a very strong circumstance tending to show a transfer. A still farther and more weighty evidence of it is the written agreement whereby the title was agreed to be transferred to the purchaser. It is difficult to understand why that agreement was left in the possession of the vendee if it had been entirely abrogated, and why the vendors should have left such an unimpeachable evidence of the transfer if it had been abandoned and one of lease substituted. It is true Bunte attempts to explain it by the statement that he was advised a written agreement of lease was totally unnecessary, but he gives no reason why he did not take up the original contract and insist upon its surrender, nor why he failed to advise the attaching creditor of the change in the condition of affairs. Parties are not at liberty to deal with their property in such a way as to give an apparent vendee control, possession, and credit on the faith and strength of the title, and then insist a title has not passed,

because the arrangements are other than those which they have stated to the creditor who gave the vendee this credit on the faith of such apparent ownership. Such transactions are condemned by all the authorities. *George v. Tufts*, 5 Colo. 162; *Jones v. Clark et al.*, 20 Colo. 353.

The case is not brought at all within the exception laid down by the last case, for there is no attempt to show any knowledge brought home to the creditor of the conditional character of the sale, if it was conditional. According to the statements made by Bunte and the apparent situation, on both of which he had a right to rely, Mrs. McLean became the purchaser and owner of the property, and when, on the faith of it, she contracted a debt with Davis, which was unpaid, she had a right to pursue the property and subject it to the payment of the claim. The vendors have no apparent equities. They voluntarily put themselves into the position which imperiled their title, and as between them and the attaching creditor, it is but just they should stand the consequences.

We are not inclined to disturb the findings of the court, and since it concluded the transaction was one of sale rather than of lease, we shall accept that as determinative of the fact, and, being unable to discover any legal error which compels us to disturb the judgment, we shall affirm it.

*Affirmed.*