Bissell, J.,
delivered the opinion of the court.
The conflicting interests of a vendor of personal property and a creditor who attached it in the possession of the vendee ied to this suit.
It was heard on an agreed statement of facts, and the record presents purely questions of law. The main facts must be stated. According to the first paragraph of the statement, C. E. Lull, on the 2d of June, 1893, bought of the appellant, Tufts, a soda fountain with certain steel founts. Lull paid part of the purchase price in cash and gave thirty-six promissory notes for the unpaid balance. To secure the payment of the notes, he delivered a certificate or convey-' anee, which is substantially :
“ Know all men by these presents, that I, C. E. Lull, justly and truly indebted unto James W. Tufts, in a certain sum of money evidenced by thirty-six notes which are described, which said notes were given by me for certain apparatus conditionally purchased of said James W. Tufts, and now at my place of business. The conditions of the purchase being that the possession of - the property is to remain with me until default in payment, but title to same shall not pass to me, but until said notes are paid shall remain in the said Tufts.”
The convejrance was denominated and understood by the parties as a chattel mortgage, was acknowledged according *35 to the statute, filed for record on the 17th day of June, and duly recorded and indexed in the records of chattel mortgages. A default in the payment of some of those notes was stated and the amount due is specified. In July, Lull became indebted to Beach, the appellee, and gave him his note for $300, due in sixty days. He defaulted in the payment of this "note, and in January, 1894, Beach sued Lull in the district court of Larimer county, procured a writ of attachment to issue, and under it the sheriff took the soda fountain and the founts into his possession. Tufts thereupon demanded possession of the chattels, which was refused, and he brought replevin. The suit resulted in a judgment in favor of Beach, whose attachment was sustained.
There is very little difference between counsel respecting the law, but their opinions very widely diverge respecting the proper construction of the instrument which Lull executed to secure the paj^ment of the debt incurred in the purchase of the fountain. Both in the briefs and in the oral argument, a good deal of discussion is indulged in about the law of conditional sales. Three early cases in Colorado have been largely commented on. We shall not attempt to explain or comment on them, or ascertain just what the law is. There is no necessity to do this because of our conclusions respecting the nature of the instrument. Undoubtedly, it seems to present some of the features of a conditional sale. The parties were very inapt, inexact, and unhappy in the construction of the contract. We have concluded, however, that what the parties did in no manner resulted in a conditional sale, but in a contract, which is governed by totally different rules. There has always been a wide diversity of opinion among courts and lawyers as to the exact criterion by which it must be ascertained whether what parties have done has resulted in a conditional sale of property, or an absolute transfer of title subject to conditions to be performed. The matter has been set at rest in this state by an able and-lucid opinion recently rendered by the supreme court. Andrews & Co. v. The Colo Savings Bank, 20 Colo. 313.
*36 It was therein very clearly decided that the optional payment of the purchase price was essential to a conditional sale. Wherever the terms impose an unconditional liability on the vendee to pay the purchase price, the sale must be taken to be absolute and not conditional. Construed in the light of that decision, it is impossible to regard the transaction, as a conditional sale, because Lull became absolutely obligated to pay the purchase price. By the execution and delivery of the commercial paper, his liability became fixed and definite. The sale was absolute, and no matter in what form the parties put their agreement, it could never result in making the sale conditional. According to our views of the proper construction of .the contract, it was in legal effect a mortgage on chattels, which, having been executed in conformity with the statute and put on record, gave the mortgagee a lien of which the attaching creditor had constructive notice, by which he was bound and under which the mortgagee has the right to assert title. The law of chattel mortgages is tolerably plain. Between the parties very little accuracy is required, and the intention is always the principal subject of inquiry. Except as the matter may be controlled by statute, very little strictness is required in the execution or the phraseology of the contract. According to the statement, the parties intended on the one side to execute, and on the other to receive a security for the unpaid portion of the purchase money. The third paragraph of the statement recites this purpose, as well as the instrument which was made. .The fourth paragraph recites that the instrument was one of conveyance, was denominated and understood by the parties as a “ chattel mortgage.” We therefore have no difficulty in ascertaining the intention. It is agreed. The purpose, was to buy the soda fountain, execute notes for the. unpaid part of the purchase price and secure them by a lieu on the. property, which was to be left in the possession of the vendee until such time as the purchase price should be paid. ■ The only remaining inquiry is whether what they did effectuated that intention. When we conclude that no special form is *37 necessary and that a paper announcing the intention and affording notice to creditors of the agreement is sufficient, the road to the result is plain and simple. Contracts like the one under consideration have been held mortgages in other states, and in this court, in a contest between a person who asserted a right under an invalid instrument as against the claim of the vendor, a similar contract was construed to be a chattel mortgage. Harbison v. Tufts, 1 Colo. App. 140.
The rule does not seem to be altered in a contest between creditors. Jones on Chattel Mortgages, chap. 2; Cobbey on Chattel Mortgages, vol. 1, chap. 7; Ellington v. Charleston, 51 Ala. 166. A very similar contract was held to be a mortgage in a late case in Kentucky. Baldwin & Co. v. Crow, 86 Ky. 679.
The parties having intended to give a security for the payment of the unpaid part of the purchase price, and having executed a contract which we are permitted to adjudge a mortgage, we have no difficult}’’, since the contract was properly acknowledged and put on record, in holding it gave notice to the subsequent creditor. By the levy of his attachment he acquired no right or lien superior to that enjoyed by the vendor.
We must therefore conclude the mortgagee’s rights were superior and he was entitled to recover the chattels from the sheriff, and judgment should have gone in his 'favor. The conclusions of the court below do not accord with our views of the proper construction of the contract, and its judgment must therefore be reversed.

Reversed.