Cunningham, Presiding Judge.
January 30, 1908, appellee (hereinafter referred to for convenience as the Machinery Company) instituted a replevin suit against the Gold Dust Consolidated Mining Company -(hereinafter referred to as the Gold Dust Company) to recover possession of certain mining machinery which the Machinery Company had theretofore sold to the Gold Dust Company, and on which a balance remained due. The Machinery Company insists that the sale was a conditional one, and the title was not to pass from it to the Gold Dust Company until the machinery had been paid for. There were two sales and two written contracts of sale, in all respects alike, in which it was specifically provided that “the entire title and ownership of the machinery should remain in the-machinery company and vendor until the full payment of all installments due thereon, together with interest.” And it was further stipulated in said written contracts between the Machinery Company and the Gold Dust Company, vendor *76 and vendee, “that the latter received the property as bailee of the former.” The Gold Dust Company was in possession of certain placer mining property as lessee, the title to the property being in the Puzzle Mining & Reduction Company, appellant here, said company being hereinafter referred to as the Puzzle Company. The-machinery in question was purchased for and installed upon this property. The pertinent portions of the lease under which the Gold Dust Company was operating the mine required it “to take possession of the mill then on the property; to add to and install therein such machinery and appliances as might be necessary in the treatment of the.ore from the mine, and to increase the capacity of said mill to at least sixty tons daily.” Incorporated in the lease was an option which permitted the Gold Dust Company, under certain conditions, to become the purchaser of the mining property covered by the lease. In connection with this option agreement appears the following:
“It is further understood and agreed that in case of. the forfeiture of the said lease, the payments made thereunder shall be considered as rental for said property up to the time of such forfeiture, and that all machinery and appliances installed in, and all improvements made upon said property shall revert to the first parties hereto.”. (The first parties being the Puzzle Company.)
It will be seen that one of the considerations for the lease and option agreement was the purchase and installation by the lessee, the Gold Dust Company, of such machinery and appliances as might be necessary for the treatment of the ore, said purchase and installation of machinery to be in addition to the machinery on the property at the time the lessee and prospective purchaser, the Gold Dust Company, took possession thereof. This is an important fact which must be borne in mind. It may, we think, be fairly inferred that the machinery *77 here involved was purchased by the Gold Dust Company of the Machinery Company, and added to the plant already upon the property, in fulfillment of that requirement of the lease and option to which we have just directed attention.
Aside from certain objections which it filed to the replevin bond, the Gold Dust Company made no appearance whatever in the case. On February 3, 1908, appellant, the Puzzle Company, filed its petition in intervention, and thereafter the contest was solely between the intervenor and the Machinery Company. For the purpose of preventing the Machinery Company from removing the machinery from the mine, the Puzzle Company instituted injunction proceedings, which were, as we view the record, but auxiliary to the replevin proceeding, and designed simply to maintain the statu quo. We shall therefore make no reference to the injunction feature of the ease, further than to say that it was disposed of on the trial at the same time the issues raised in the replevin suit were heard, the two cases being consolidated by stipulation. The case was tried to the court without a jury, the trial judge finding that there was due the Machinery Company from the Gold Dust Company $1,085.14. By the decree the intervenor, the Puzzle Company, was given thirty days-in which to pay this amount to the Machinery Company, and in case payment of this sum was not made by the Puzzle Company within the time specified, the right of possession of the machinery was awarded to the Machinery Company.
The Puzzle Company defended upon two distinct theories, the first being that the sale was, under the authorities of this state, an absolute one, and that the attempt on the part of the Machinery Company to reserve a secret lien should not be upheld. Its second defense was based upon the contention that the mining machinery had become so affixed to the realty as to be *78 come a part thereof, hence could not be recovered in a replevin suit, in any event, nor at all as against the intervenor, which had in the meantime declared a forfeiture of the lease and re-entered into possession of the mining property. It will thus be perceived that two difficult questions are presented for our determination.
1. The authorities pertaining to conditional sales are far from harmonious; the rule pertaining to fixtures, and when personal, property loses its identity as such and becomes merged in the real estate to which it is attached, is made to depend largely upon the facts of each particular case. — Hardware Co. v. McCarthy, 10 Colo. App., 220, 50 Pac., 744. The first question has been repeatedly before the courts of this state for consideration. See George v. Tufts, 5 Colo., 165; Weber v. Diebold, 2 Colo. App., 68, 29 Pac., 747; Tufts v. Beech, 8 Colo. App., 35, 44 Pac., 771; First Congregational Church v. Grand Rapids Co., 15 Colo. App., 46, 60 Pac., 948; Andrews v. Colo. Savings Bank, 20 Colo., 313, 36 Pac., 902, 46 Am. St. R., 291; Jones v. Clark, 20 Colo., 353, 38 Pac., 371; Clark v. Bright, 30 Colo., 199, 69 Pac., 506; Coors v. Reagan, 44 Colo., 126, 96 Pac., 966.
It is not necessary that we should analyze these cases, or quote at length from them. Suffice it to say that, contrary to the ruling in many, perhaps the majority of the states, the doctrine in Colorado has become well established that a conditional sale reserving, a secret lien to the vendor is void as against creditors or subsequent holders having no notice thereof, and' who are injuriously affected thereby. Mr. Justice Maxwell, in the Coors case, supra, quotes the following with approval from the Weber case, supra:
“Appellee, having vested Wood with the possession and all indicia of ownership, it was not a bailment, but a sale subject to defeasance upon a subsequent condition, an arrangement known only to the parties themselves. *79 A party who, by his own acts, places another in the ostensible position of owner, should be estopped to deny such ownership. Private transactions of this character are not favored, and they are opposed to public policy.”
In other words, such conditional sales as against third parties having.no notice thereof, and who are injuriously affected thereby, must be treated as absolute sales. Hence, so far as the Puzzle ’Company is concerned, the sale of the machinery in the instant case must be treated as absolute.
There are additional reasons appearing in the contracts of-sale entered into between the Machinery Company and the Gold Dust Company why these sales must be regarded as absolute, so far, at least, as the Puzzle Company is concerned, under the rule in Andrews v. Colorado Savings Bank, supra, viz.: a promissory note was given by the Gold Dust Company, the vendee, to the Machinery Company, the vendor, for the balance due, and the agreements further provided that:
“Said party of the second part, the vendee, agrees that they will promptly pay to the party of the first part the purchase price for said property, when and as the same shall become due and payable as aforesaid.”
In the Andreios case, Mr. Justice Goddard, speaking for the court, says:
“Notwithstanding the agreement itself provides that the title to the seating shall remain in Andrews & Co. until such payment in cash shall have been made therefor, thus evidencing an intent to make the sale conditional so far as the transfer of the title is concerned, that such an intention is rebutted by the terms and stipulations in the notes given in pursuance of the agreement; they being absolute obligations, making the purchaser unconditionally liable for the purchase price. The optional payment of the purchase price is as essential to constitute a transaction a conditional sale as the *80 conditional passing of the title; and a transaction that in express terms imposes an unconditional liability upon the vendee to pay the purchase price for the property delivered, however characterized by the parties, is essentially and in legal effect an absolute, and not a conditional sale.”
Inasmuch as the lease from the Puzzle Company to the Gold Dust Company required the latter to purchase and install, by way of addition to the plant, other mining-machinery necessary to the proper operation of the mine, such requirement being one of the considerations moving from the lessee to the lessor, in the purchase and installment of the machinery here involved the Gold Dust Company, the lessee., was but carrying out one of the conditions of the lease and option. The consideration having been in a sense paid to the lessor (who is not shown to have had knowledge of the secret lien) by the lessee when it installed the machinery in question, this consideration cannot now be recovered by the Machinery Company from the lessor, in virtue of a secret lien incident to a so-called conditional sale. The harshness of this rule is more apparent than real, since the records of the county wherein the mining property is located afforded notice to the Machinery Company at the time it sold the machinery to the lessee that the record title of the mining property was in the Puzzle Company. While the lease in question appears not to have been recorded, yet the Machinery Company could have easily ascertained what the provisions of the lease were; ut least there is nothing in the record to indicate any difficulty which it would have encountered in this behalf. No great hardship is perceived in a rule which requires the vendor of mining machinery to obtain from the owner of the record title of mining property on which the machinery he sells is to be installed and used, consent to the reser *81 vatio n of a vendor’s lien before delivering snch machinery to a purchasing lessee.
2. The machinery sold by the Machinery Company to the Gold Dust Company, and which is involved in this controversy, consisted of the following articles: One 35 H. P. boiler, 180 H. P. boiler, 2 Frue-Vanners, 4 iron pulleys, 1 wood pulley, and' 4 No. 5 Wilfrey tables. We have followed the language used in the abstract in describing these articles of machinery. As we understand the terms, the Frue-Vanners and the Wilfrey or Wilfley tables are all used for the same purpose, and constitute heavy mining machinery. The testimony concerning the installation of this, machinery shows that the boilers were held in place by stone casings laid up in mortar and cement, and were connected with the balance of the mill by proper piping. The shafting was attached by bolts to the timber or framework of the mill. The tables were framed in a foundation resting upon the earthwork of the mill, and all the tables being connected to the shafting by bolts. The machinist who helped install this machinery was asked the following questions, and gave the following answers:
“Q. Describe to the court the manner in which the tables are installed. A. We put them ’down the way we usually do to make them stay. Q. Describe more in detail. A. In that we made an extra foundation and set them on, made a good solid foundation, and they were fastened down solid. They fasten the Wilfley table down with a lag screw to this foundation made .especially for that. That is about all that was necessary to do. Q. Tell the manner in which it (the 80 H. P. boiler) was installed. A. It’s put in in a stone wall as we usually install boilers of that kind, and connected to the engine. Both boilers are connected. Q. What would be necessary, Mr. Gilbert, in order to remove the 80 II. P. boiler you refer to ? A. Disconnect the engine.' * * * Q. What else would *82 be necessary in order to remove the 80 H. P. boiler from the mill besides disconnecting it from the engine? A. Just simply a lot of work. Q. What effect would it have, if any, oh the stone or cement casing? A. We would tear that all down.”
Under the ruling in this jurisdiction these fixtures become a part of the realty . — Roseville Co. v. Iowa Co., 15 Colo., 29, 24 Pac., 920, 27 Am. St. R., 373; Hardware Co. v. McCarthy, 10 Colo. App., 200-219, 50 Pac., 744; Mosca Town Co. v. Wellington, 39 Colo., 326, 89 Pac., 783, 121 Am. St. R., 175; Gibson Co. v. McNichols, 51 Colo., 59, 116 Pac., 1041.
The facts in the last case cited, and the Roseville case in the 15th Colorado, are strikingly similar to the facts here under consideration, both as to the character of the property and the manner of its installation. In Hardware Co. v. McCarthy, supra, it is said:
“Now it is not absolutely necessary that in order to constitute a fixture, so as to take an article from without the line of personal property, it should be permanently affixed to the freehold by physical attachment. This may or may not be the case. * * * The controlling questions now, in determining as to a large class of articles whether they partake of a real or a personal character, are the intention of the party to make a permanent accession to the freehold, and the use to which the article is to be applied. (Citing cases.) If it constitutes a part of a plant of machinery necessary to the successful operation of the whole, or if its use is essential to the operation of some part of the machinery, which is physically attached to the freehold, then it may in many cases be properly termed a fixture, even though it wholly lacks a permanent physical attachment to the realty.”
The record in this case we think clearly shows, not only that the articles of machinery here in controversy were necessary to the successful operation of the whole *83 plant, or at least to the operation of some part of the machinery, bnt it further shows, with reasonable clearness, that it was the intention of the party who installed the machinery to make a permanent accession to the freehold and to use these articles of machinery for the sole purpose of the development and operation of the mine on which they were installed. Moreover, they appear to have been attached to the freehold with this particular purpose in view. To hold that this machinery did not become a part of the real estate upon which it was installed would be to .fly in the face of an unbroken line of adjudications from the two appellate courts of this state.
The judgment of the district court is reversed.