A. H. ANDREWS & COMPANY v. THE COLORADO SAVINGS BANK ET AL.

1. CONDITIONAL SALES.

In determining whether an arrangement under which chattels have been delivered by one party to another constituted a conditional sale or an absolute sale, with a reservation of a lien to secure the payment of the purchase price, the entire transaction must be considered and its legal effect ascertained, not alone by any particular provision in the written contract, but from all the stipulations and agreements contained therein, as well as the notes given in connection therewith.

2. SAME.

Notwithstanding the agreement itself provides that the title to the property shall remain in the vendor until full payment shall be made therefor, thus evidencing an intent to make the sale conditional so far as the transfer of title is concerned, such intention may be rebutted by the terms and stipulations of the notes given in pursuance of the agreement.

3. SAME—WHEN VOID—RECORD.

The optional payment of the purchase price is as essential to constitute a transaction a conditional sale as is the conditional passing of title; and a transaction which in express terms imposes an unconditional liability upon the vendee to pay the purchase price of the property delivered, however characterized by the parties, is essentially an absolute and not a conditional sale. Such an instrument, so attempting to reserve a lien on the property as security for the payment of the purchase price, when not acknowledged and recorded in conformity with the chattel mortgage act, is void as to third parties, as being in contravention therewith.

*Error to the District Court of Arapahoe County.*

THE facts out of which this controversy arises are in substance as follows: On March 9, 1889, the defendant Riethman leased to defendant Smith certain lots in the city of Denver for the term of five years; that afterwards, on June 18, 1889, the lease was extended for a period of ten years from that date. Smith erected on said lots a theater building, and placed therein certain furniture, the ownership of which is the principal question at issue in this controversy.

On August 17, 1889, the Colorado Savings Bank loaned to Smith $10,600 for 90 days, and took his note, with the

defendant Bush as surety, which note was further secured by the assignment of the aforesaid lease of the real estate, including the building thereon, and the furniture and fixtures therein, to the defendant Clough as trustee.

That on May 29, 1889, A. H. Andrews & Co. entered into the following written agreement with the defendant Smith:

" This agreement, made the 29th day of May, 1889, between A. H. Andrews & Co., of Chicago, Ill., party of the first part, and W. L. Smith, representative for Metropolitan Theater Co., of Denver, Colo., party of the second part, witnesseth:

"That the said parties, in consideration of the mutual promises and undertakings hereinafter expressed, do hereby agree as follows: The party of the second part hereby purchases and orders from the said A. H. Andrews & Co., party of the first part, the following described seating, viz: (Here follows description of furniture.) The party of the second part further agrees to pay for said seating upon the completion of this contract by said first party the sum of eight thousand four hundred twenty-eight 60-100 dollars, as follows: $2,107.15 before goods are shipped, $2,107.15 by note 60 days after receipt of chairs, $2,107.15 by note 90 days after receipt of chairs, $2,107.15 by note 120 days after receipt of chairs; such payment to be made direct to A. H. Andrews & Co., at their office in Chicago.

"It is mutually agreed that if, by the provisions of this contract, the party of the first part is to deliver the seating set up and ready for use, the party of the second part shall give to the first party, at least two weeks previous to the —— day of ———, 188—, suitable facilities for fitting together said seatings at the building for which same is ordered, including necessary light, together with clear and. unobstructed floor space for the purpose of placing the said seating in position on floor of said building.

" All changes made by the party of the second part in plan of seating, after said plan has been approved by said second party or —— representatives, shall be at the expense of the party of the second part.

" It is further agreed that, unless otherwise specifically expressed herein, said seating is to be delivered in 'knock down' shape, with parts separated and closely packed in cases (so much of the attaching parts as can be done without danger of breaking or increase of freight will be done at factory before shipment), and that party of the first part is, in such case, in no way responsible for the joining of the same together, or for placing chairs in position.

" The party of the first part agrees to deliver said seatings, as above described, to said second party, F. O. B. Chicago, on or about the tenth day of August, 1889, in accordance with plan or diagram of said room and specification, which shall be furnished to the first party by the party of the second part.

" It is mutually agreed and understood that the title to said seating, or any portion thereof, shall be and remain in said A. H. Andrews & Co., the party of the first part, until full payment in cash therefor shall have been made to said first party; and the first party may at his option place this contract on record after the manner of the registry of chattel mortgages.   In witness whereof the parties hereto have hereunto set their hands the day and year above written.

" A. H. ANDREWS & CO.,

" By J. W. KENFIELD.

" W. L. SMITH."

That at this time The Metropolitan Theater Company had not been incorporated, but, it is alleged, was a copartnership between Smith and some other persons.   In pursuance of this contract, Smith executed and delivered to the intervenors his three promissory notes, as follows:

" DENVER, COLO., 29th May, 1889.

" Sixty days after August 10th, 1889, after date, for value received, we promise to pay to A. H. Andrews & Co., or order, two thousand one hundred seven 15-100 dollars, at the banking house of First National Bank, Denver, Colo., with use at the rate of — per cent per annum until due; after maturity, ten per cent.   This note is given to secure payment for 618-72 opera chairs, 640-74 opera chairs, 778-47

wood folding chairs, —— 96 settees; and the title, owner-
ship, and right of property does not pass from said A. H.
Andrews & Co., or their assigns, until this note and inter-
est is paid in full, and said A. H. Andrews & Co., or their
assigns, shall have the right to assume possession at any time
they may deem themselves insecure, and after maturity to sell
said property, and apply the proceeds of such sale, over and
above the expenses of taking and retaining possession thereof,
on this note, and to collect the balance.

"W. L. SMITH."

The second and third notes are similar in their terms and
conditions, except they are payable in 90 and 120 days, respec-
tively, and describe other and different chairs.

That on June 22, 1889, Andrews & Co. and defendant Smith
entered into another written contract, in words and figures,
containing like conditions as the contract above set forth,
for different furniture, amounting in the aggregate to $800,
to be paid for: $200 cash in advance, and the balance by
notes for $200 due in 60, 90, and 120 days, respectively.

These notes, except in amount and describing other furni-
ture, are identical in terms with the note above set forth.
That afterwards, and on or about December 30, 1889, The
Metropolitan Theater Company was duly organized as a
corporation, and on that date defendant Smith sold and
deeded his interest in the leasehold, theater building, fix-
tures, and furniture to that company, subject to the lien of
the Colorado Savings Bank.

On December 31, 1889, the Theater Company entered into
a written contract, recognizing the priority of the lien of the
Colorado Savings Bank, and agreed to pay said lien in con-
sideration that the bank would extend the time therefor, and
executed its notes to the bank for the amount of such in-
debtedness; and to secure the payment of such notes executed
to defendant Stuart, as trustee, a deed of trust on said real
estate, leasehold interest, building, fixtures, furniture, etc.
And, to further secure said indebtedness, the Theater Com-
pany executed to the bank a chattel mortgage on the leasehold,
furniture, and fixtures. This trust deed and chattel mortgage

was filed January 4, 1890. On January 1, 1890, The Metropolitan Theater Company executed and delivered to defendant Fischer a deed of trust of all said theater property, furniture, etc., in an amount not named, to secure claims of many persons, creditors of defendant Smith.

On the 28th of March, 1890, the Colorado Savings Bank commenced its action in the district court of Arapahoe county against the other defendants, to foreclose its deeds of trust and chattel mortgages on the theater building and said furniture and fixtures. In this action Andrews & Co. filed their petition in intervention, and were made a party by order of the court, upon stipulation of the parties.

On or about the 5th day of December, 1890, the trial was had on this petition of intervention to the court. Upon the trial no evidence was introduced other than that introduced by and on behalf of A. H. Andrews & Co. Upon the trial it was admitted that A. H. Andrews & Co. was a corporation duly organized under the laws of the state of Illinois, that defendant Smith did execute the several notes and contracts as set out in the intervenors' petition, and that the chairs, sofas, etc., mentioned in the petition of intervenors were delivered to defendant Smith at the city of Denver, Colo., about the month of August, 1889, and by him placed in the Metropolitan Theater.

The intervenors introduced in evidence the contract mentioned in the petition of intervention, with the certificate of the county clerk indorsed thereon, showing that the one dated May 29, 1889, was filed in the clerk and recorder's office of Arapahoe county on June 3, 1889; and also the three notes referred to in said contract; and the contract, dated June 22, 1889, with a certificate showing that it was recorded July 8, 1889, together with the three notes referred to in said contract.

Other testimony was introduced, to the effect that the furniture was delivered in Denver on or about the 20th, and had been placed and set up in the theater building on the evening of the 23d of September, 1889. The court below rendered judgment against intervenors. To reverse this judgment, intervenors bring the case here on error.

Mr. JOHN H. DENISON, Mr. RALPH E. STEVENS and Mr. HUGH BUTLER, for plaintiff in error.

Mr. T. B. STUART and Messrs. BENEDICT & PHELPS, for defendants in error.

MR. JUSTICE GODDARD delivered the opinion of the court.

The question that is first presented for our consideration, and one that we regard as decisive, is whether the arrangement under and in pursuance of which the seating was furnished by plaintiffs in error constitutes a conditional sale, or an absolute sale and transfer of ownership, with a reservation of a lien to secure the payment of the purchase price. If the latter, it must be conceded that it is in effect a chattel mortgage, and void as to third parties, because not executed and acknowledged in conformity with the chattel mortgage act.

In determining this question, the entire transaction between intervenors and Smith must be considered, and its legal effect ascertained, not alone by any particular provision of the written contract itself, but from all the stipulations and agreements contained therein, as well as in the notes given in connection therewith. When so considered, it is evident, notwithstanding the agreement itself provides that the title to the seating shall remain in Andrews & Co. until full payment in cash shall have been made therefor, thus evidencing an intent to make the sale conditional so far as the transfer of the title is concerned, that such an intention is rebutted by the terms and stipulations in the notes given in pursuance of the agreement; they being absolute obligations, making the purchaser unconditionally liable for the purchase price. The optional payment of the purchase price is as essential to constitute a transaction a conditional sale as the conditional passing of the title; and a transaction that in express terms imposes an unconditional liability upon the vendee to pay the purchase price for the property delivered, however characterized by the parties, is essentially and in legal effect an absolute, and not a conditional sale.

" If, by the terms of the agreement, the purchaser becomes

*liable unconditionally* for the purchase price, although by the· agreement he may never get the title and ownership of the property, then the agreement is an evasion of the registration statute, as its purpose is simply to retain a secret lien." *Hart v. Manufacturing Co.*, 7 Fed. Rep. 553. In the case of *Heryford v. Davis*, 102 U. S. 235, in discussing an agreement purporting to be a lease, but similar in its terms to the one at bar in so far as it imposed an absolute liability upon the railroad company to pay for the cars, Mr. Justice Strong, in speaking for the court, says: "The railroad company was not accorded an option to buy or not. They were bound to pay the price, either by paying their notes or surrendering the property to be sold in order to make payment. This was in no sense a conditional sale. This giving the property as a security for the payment of a debt is the very essence of a mortgage, which has no existence in a case of conditional sale."

In terms, the notes executed by Smith to the intervenors made him an absolute debtor for the price of the furniture, and the stipulation therein that "A. H. Andrews & Co., or their assigns, shall have the right to assume possession at any time they may deem themselves insecure, and after maturity to sell said property, and apply the proceeds of such sale, over and above the expenses of taking and retaining possession thereof, on this note, and to collect the balance," being manifestly for the purpose of enabling the intervenors to enforce such payment by subjecting the property to sale for that purpose, is an attempt to reserve a lien thereon to secure the payment of the purchase price.

We are therefore clearly of the opinion that the agreement and notes evidencing the transaction between the intervenors and Smith constituted an absolute sale, and that the attempt to reserve a lien on the property as security for the payment of the purchase price was void as to third parties, as being in contravention of our chattel mortgage act. It follows from this conclusion that the questions so elaborately and ably argued as to the validity of the transaction, considered as a conditional sale, are eliminated from the case, and we are

relieved from the necessity of passing upon and determining what the rights of the respective parties would have been had the sale been of that character. The judgment of the court below is affirmed.

*Affirmed.*