## No. 10,931

ANGLO-AMERICAN MILL CO. v. FIRST NATIONAL BANK OF
GLENWOOD SPRINGS.

Decided October 6, 1924.

Action to establish priority of lien on personal property.
Judgment of dismissal.

### *Affirmed.*

1. APPEAL AND ERROR—*Pleading—Motion, Demurrer.* No error can be predicated on the action of the trial court in treating a motion to strike as a general demurrer, which was sustained, where counsel for the complaining party insisted that the motion be so considered.

2. PLEADING—*Information and Belief.* An allegation in a complaint that defendant had actual and constructive notice of an alleged secret lien on personal property, should be made on plaintiff's own knowledge, and not on information and belief.

3. VENDOR AND PURCHASER—*Conditional Sale.* Optional payment of the purchase price is essential to constitute a transaction a conditional sale, and if its terms impose an unconditional liability upon the purchaser to pay, the sale is in legal effect absolute and not conditional.

4. *Sale—Chattel Mortgage.* Where personal property is sold on time with the reservation of a secret lien in the seller, if the contracts are not recorded, they are void as to third persons whose rights attach while the property remains in possession of the purchaser.

5. *Lien—Third Parties.* If a third party has notice of a secret lien, which is in the nature of an unrecorded chattel mortgage, he will not be bound by such notice where the lien is divested by failure of the lienor properly to preserve and enforce his lien.

6. CHATTEL MORTGAGE—*Maturity—Foreclosure.* Where written instruments in the nature of a chattel mortgage furnish no information as to when the secured indebtedness becomes due, and no time is therein fixed for payment, the indebtedness is payable on demand or within a reasonable time thereafter, and

the mortgage lien, to be effective, must be enforced within the statutory thirty days.

7.   PLEADING—*Sales.*   Allegations of a complaint held to show an absolute and not a conditional sale.

*Error to the District Court of Garfield County, Hon. John T. Shumate, Judge.*

Mr. M. J. MAYES, Mr. J. W. DOLLISON, Mr. C. W. FULGHUM, for plaintiff in error.

Mr. C. W. DARROW, for defendant in error.

*Department Three.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THE Anglo-American Mill Company, a Kentucky corporation, made a contract with a Mr. Cowden, to whose rights and liabilities thereunder the Cowden Mill and Elevator Company, one of the defendants, has succeeded, whereby the mill company agreed to, and did sell, and Cowden agreed to, and did buy of the mill company, certain mill machinery which he put into a mill erected on his premises at Silt, Colorado. The transaction between the contracting parties was evidenced by several written agreements, including a so-called license contract or purchase agreement, and a number of promissory notes executed by Cowden and delivered to the mill company for the balance of the purchase price, $3,100 of which were paid in money at the time of the delivery of the machinery. The allegations of the complaint allege an unconditional sale; the promissory notes for the balance of the purchase price are negotiable instruments and upon their face import an absolute obligation to pay. The accompanying writings, particularly the license contract, provided that, upon a failure of the maker to pay the notes, he was required to remove the machinery and return it to the seller, or the seller itself might enter the mill and remove the machinery. The contract also provided that the seller should have a lien upon the property as a security for the payment of the

promissory notes.   Neither the contract of sale nor the license contract was recorded.   The notes were renewed from time to time; some by the original purchaser maker, others by his successor in interest, the elevator company. While this machinery was in possession of the elevator company, and none of the written instruments constituting the contract between the parties being of record, the First National Bank of Glenwood Springs, a codefendant here with the elevator company, made loans of money to the elevator company aggregating about $22,000, which the company failed to pay and suit upon its promissory notes evidencing the loans was begun by the bank, a receiver was appointed to take possession of the mill property, and final judgment was entered upon the notes and, under execution, sale of the property was made and the bank bid it in.

This action was brought by the Anglo-American Mill Company as plaintiff against the bank and the elevator company, its object being to establish as against them the priority of its secret lien upon this mill machinery, and to foreclose the lien by sale of the machinery, or otherwise, and to satisfy the same by applying the proceeds to the payment of the balance of the purchase price.   The elevator company, if served with process, did not appear or defend.   The defendant bank filed a motion to strike certain portions of the complaint which the court treated as a general demurrer and upon its granting of the motion, so considered, dismissed the action upon the announcement by the plaintiff that it declined to plead further but would stand upon its complaint.

We have not the slightest doubt about the correctness of the decision of the trial court.   The first point made by the plaintiff in error, the seller of the machinery, is that it was error for the trial court to treat the defendant mill company's motion as a general demurrer.   A sufficient answer is that in the well-considered opinion which the plaintiff in error brought up in the record, is found a statement by the trial judge that the plaintiff's counsel themselves

insisted that the motion should be treated as a demurrer, and, acting upon their suggestion, the court did so.

The chief reliance of plaintiff in error is that the transaction between it and the purchaser of the machinery was, in legal effect, a conditional, and not an absolute, sale and that since the complaint alleges that the defendant bank had knowledge of the true nature of the transaction and that the parties intended the sale to be a conditional one, and that plaintiff thereunder retained title to the machinery and had a lien thereon until all the purchase price was paid, its rights, as a seller, are paramount to those acquired by the bank under the execution sale. First we say that it is doubtful if the allegation of the complaint is sufficient as to the alleged knowledge of the bank of the existence of the unrecorded lien. We say this because the allegation is on information and belief that the bank had actual and constructive notice. What the constructive notice was does not appear, and in such circumstances we think that, in the absence of any explanation of plaintiff's alleged lack of knowledge or information on the subject, the allegation in its complaint as to actual knowledge of the defendants should have been upon plaintiff's own knowledge, and not upon information and belief. But assuming that there is in the complaint a sufficient allegation that defendant knew of the existence of an unrecorded lien in plaintiff's favor at or before the time defendant's rights accrued, the judgment of the trial court must, nevertheless, be affirmed. This contract in all essential particulars is similar to, indeed, in legal effect, is the same as, the contracts considered by this court in *Andrews & Co. v. Colo. S. Bank,* 20 Colo. 313, 36 Pac. 902, 46 Am. St. Rep. 291; *Clark v. Bright,* 30 Colo. 199, 69 Pac. 506; *Church v. Furniture Co.,* 15 Colo. App. 46, 60 Pac. 948; and *Turnbull v. Cole,* 70 Colo. 364, 201 Pac. 887, 25 A. L. R. 1149. It was held in the Andrews Case, and its doctrine was followed and approved in the others, that though an agreement itself provides that title to property shall remain in a vendor until full payment shall be made, "thus evidencing an intent to

make the sale conditional so far as the transfer of the title is concerned, that such an intention is rebutted by the terms and stipulations in the notes given in pursuance of the agreement." And what is particularly applicable here, the court further said: "The optional payment of the purchase price is as essential to constitute a transaction a conditional sale as the conditional passing of the title; and a transaction that in express terms imposes an unconditional liability upon the vendee to pay the purchase price for the property delivered, however characterized by the parties, is essentially and in legal effect an absolute, and not a conditional sale." That is quite pertinent to the facts here. Though the different writings entered into between the mill company and Cowden stipulated that title should not pass from the seller until full payment of the purchase price was made, the promissory notes given as part of the purchase price were absolute, unconditional promises to pay. No option was given to the vendee as to whether or not he should pay, but he was absolutely bound to pay, and if he did not, he was required to return the machinery to the vendor, or the latter might itself enter the mill and remove it. This transaction between buyer and seller was an absolute sale with the reservation of a secret lien thereon by the seller which made the written contracts a chattel mortgage under the law of this state and the decisions of this court in the Andrews and other cases. Not being recorded they were void as to third persons whose rights attached while the property remained in the possession of the mortgagor vendee.

If it be a fact that the bank had knowledge of this unrecorded mortgage, on the theory that there was an absolute sale with a mortgage back as security, the notes secured thereby were not paid at maturity or at all and renewal notes were made from time to time. There could be no proper extension of the mortgage to secure the renewal notes because there was no mortgage of record, and the life of a chattel mortgage, under our Chattel Mortgage Act, may not be prolonged by an extension unless the

proper notation thereof is made in the records of the county recorder. Even if this chattel mortgage, because the bank had knowledge of it when its rights accrued, was a paramount lien when the bank lent its money to the elevator company, such lien might be divested for a failure of the lienor properly to preserve and enforce it. The original notes, which were secured by the mortgage, matured before the bank made its loan on which it later recovered judgment and made sale of the elevator property. No attempt was made by the mortgagee thereafter or theretofore to take possession. If the lien was extended to correspond with the renewal of the notes—which, however, in this state was legally impossible—the renewal notes themselves became due before the bank's rights attached and no possession, within a reasonable time thereafter, was taken by the plaintiff mortgagee. Indeed, possession was never taken by the mortgagee, nor was there any attempt by it to do so, nor was there any claim of such right made until after the execution sale and after the bank itself had taken possession of the property. So that the rights and equities of the bank are superior to those of the plaintiff vendor.

There are other reasons for the affirmance of this judgment. If it be true as the plaintiff contends, that the several written instruments, aside from the notes, constituted the real contract of the parties, these instruments furnish no information as to when the secured indebtedness became due and no time was designated therein when the indebtedness was to be paid. The rule of law in such a case is that the indebtedness was payable on demand or within a reasonable time thereafter, and any mortgage, such as was created by these instruments, must be foreclosed within a reasonable time thereafter, our statute making a reasonable time thirty days. No attempt, as we have said, was made by the plaintiff to take possession. Then, too, if there was any conditional feature about this sale it appears from all the provisions of the contract, taken together, it was only for a period of thirty days, which period of time was given by the vendor to the vendee Cowden in which to

test the machinery in operation to see if it was satisfactory. This test was made and Cowden was satisfied and it was then that he delivered the unconditional and absolute promissory notes for the balance of the purchase price. The condition, if it ever existed, then ceased and title passed out of the plaintiff and absolutely fixed liability upon Cowden for the payment of the balance due.

Waiving, as we have, all formal defects, irregularities and fatal inconsistencies in the complaint, which are quite apparent, we are thoroughly satisfied that its allegations, read with the several agreements which are made a part of the complaint by reference, show an absolute, and not a conditional, sale; that even if the defendant bank had actual knowledge of the existence of the several contracts that made the transaction a chattel mortgage, whatever rights or liens the plaintiff had thereunder were forfeited and lost by reason of its failure to take possession as the law required.

The judgment of the district court is, therefore, affirmed.

MR. CHIEF JUSTICE TELLER and MR. JUSTICE SHEAFOR concur.