## No. 12,372.

### Illinois Building Company *v*. Patterson.

(15 P. [2d] 699)

Decided September 26, 1932.

Mr. Cass M. Herrington, Mr. John R. Adams, for plaintiff in error.

Mr. William A. Black, for defendant in error.

*En Banc.*

Mr. Justice Alter delivered the opinion of the court.

C. L. Patterson, doing business as C. L. Patterson Office Equipment Company, defendant in error, hereinafter referred to as plaintiff, brought an action in a justice of the peace court against the Illinois Building Company, a corporation, plaintiff in error, hereinafter referred to as defendant or landlord, to recover possession of certain office furniture, the title to which was claimed by both plaintiff and defendant. Judgment was rendered for plaintiff, and defendant appealed to the county court, where judgment was again rendered for plaintiff, to review which, defendant prosecutes this writ. Investors Bond & Mortgage Company, when referred to herein, will be designated as the tenant.

The material facts in this case, about which there is no substantial conflict, are: Defendant is the owner and in charge of a certain office building in the city of Denver, and, on February 10, 1928, it entered into a written lease with the tenant for certain office space, for the period of

a year, at an annual rental, payable in monthly install-
ments. The written lease contained a provision that,
should the tenant be in default in the payment of a
monthly installment, for the period of five days, the land-
lord might terminate the lease and reenter and repossess
itself of the premises, and remove any personal property
belonging to the tenant, without prejudice to any claim
for rent, and also the following: ''The Landlord shall
have at all times a valid first lien for all rentals due or to
become due hereunder from the Tenant upon all of the
personal property of the said Tenant situated in the said
leased premises, and said property shall not be removed
therefrom without the consent of the Landlord until all
arrearages in rent shall have first been paid and dis-
charged.'' The lease was unacknowledged and unre-
corded.

The tenant failed to pay the monthly installment of
rent, due on December 1, 1928, whereupon defendant
placed a new lock on the door of the offices and took pos-
session of the office furniture therein, claiming a lien
thereon, by virtue of the above quoted paragraph of the
lease, which lien defendant had reduced to possession,
prior to receiving any notice whatever that plaintiff
claimed any interest in or title to or right of possession
of the office furniture. Plaintiff demanded possession,
which was refused, and the replevin action followed.

Plaintiff is engaged in the office equipment business in
Denver, and on February 10, 1928, the same day upon
which the lease hereinabove referred to was executed,
entered into a written agreement with the tenant respect-
ing certain office furniture, which written agreement is in
words and figures as follows:

''Lease of Goods

''This is to Certify, That I, Investors Bond & Mort-
gage Co. (421 U. S. Nat'l Bank Bldg.) Have this day
leased of C. L. Patterson Office Equipment Co. the fol-
lowing goods known and described as follows: * * *
valued at $748.00 subject to the following, to-wit:

"First—That I make a payment of $300.00 and each succeeding Month hereafter a payment of $56.00 until $748.00 is paid.

"Second—That I will not sell or attempt to sell or dispose of any of said goods at the premises, No.......now occupied by me (removal from fire or danger excepted), and not remove them therefrom without the consent of C. L. Patterson Office Equipment Co.

"Third—Should I fail to make any of said payments as specified, or sell or attempt to sell or dispose of any of said goods or any interest therein, or should any of such goods be attached or levied on, or removed or attempted to be removed from said premises, then this lease shall be void, and I will forthwith surrender and return said goods to C. L. Patterson Office Equipment Co. in as good condition as when received, customary wear by careful usage excepted.

"Fourth—No agreement of sale of said goods is implied, nor shall a sale or purchase be deemed valid without a written receipt from said C. L. Patterson Office Equipment Co. therefor. Time is hereby made the essence of this agreement.

"Fifth—I hereby give said C. L. Patterson Office Equipment Co. and his representatives permission to enter upon my premises and remove the goods contained therein whenever the terms of this lease shall be violated.

"In Witness Whereof, I have hereunto set my hand, in the City of Denver, Colo., this 10th day of February, 1928.

> Name   Investors Bond & Mtg. Co.
> Address   421 U. S. Nat. Bk. Bldg.
> By C. J. Erett, Sec'y

"C. L. Patterson Office Equipment Co.
"Salesman Lynch"

It will be observed that the above instrument was unacknowledged; however, it was filed for record in the office of the clerk and recorder of the City and County of Denver on February 28, 1928. All of the installments

due on the above instrument were paid, excepting only the last in the sum of $56, which fell due in October, 1928, and for this amount the tenant gave plaintiff a check, which was dishonored. Subsequent to the date when defendant took possession under its landlord's lien, being sometime after December 1, 1928, plaintiff made his demand on defendant for possession of the chattels.

Some of the evidence offered on plaintiff's behalf, and admissions of his counsel at the trial, tend to show the construction placed by them upon the ''Lease of Goods,'' hereinbefore copied in full, and which will be hereinafter referred to as exhibit A. For the purpose of showing the exact nature of this transaction, we quote such parts of the testimony as refer thereto.

One Lynch, who was the salesman who negotiated exhibit A, testified in part:

''Q. I hand you plaintiff's Exhibit A and ask you to state what it is? A. This is the lease for merchandise which I *sold* to the Investors Bond & Mortgage Company.

\* \* \*

''Q. What are your duties in connection with your employment? A. Well, I sell merchandise and equipment, appraise second-hand furniture, and buy furniture.

\* \* \*

''Q. What do you mean by sales? A. We have different ways of selling goods. Sometimes we sell it directly for cash, sometimes on open account, sometimes we lease it on deferred payments.

''Q. Will you explain what you mean by lease and deferred payments?

''Mr. Black: [Plaintiff's attorney] I object to going into this matter. The Supreme Court has ruled upon these *contracts of sale. They are conditional sales.* It is a question of law. This witness is not competent to tell what a contract is.

''The Court: Objection overruled.

"A. So far as the way the contract reads it is our equipment until it is fully paid for.

"Q. When it is fully paid for title passes? A. Yes sir.

"Q. A customer owns these leased goods, you deliver by bill of sale when the payments are made—after all payments are made? Was that the understanding at the time Exhibit A was entered into? A. Yes.

"Q. That is, that the Investors Bond & Mortgage Company would get title when all the payments were made? A. It remains ours until all payments are made."

(Italics ours.)

Plaintiff testified, in part, as follows:

"Q. Isn't it customary when you lease goods, upon payment of the full list price, in accordance with the terms of the lease, that you contemplate giving a bill of sale in every case? A. If the lease is carried out according to the agreement, we do.

\* \* \*

"Q. Your lessee doesn't understand that upon payment of the purchase price set forth that he will get a bill of sale for the goods? A. We assume that he knows that.

\* \* \*

"Q. You stated you received this check [referring to the dishonored check of November 24, 1928, given him by the tenant] in payment of the balance due on the furniture involved in this suit here? A. Yes sir.

"Q. Mr. Patterson, you didn't give the Investors Bond and Mortgage Company a bill of sale for this furniture on the strength of this check? A. I did not.

"Q. You still retain title to this property? A. I have had short checks before and I was watching my step.

\* \* \*

"Q. That was the balance before bill of sale issued in accordance with the understanding with the Investors Bond and Mortgage Company? A. Yes sir. I said, 'I

got a check on a bank in Lincoln, Nebraska, and if it don't come back, I will issue a bill of sale.' "

Mr. Lynch, on direct examination, testified:

"Q. Mr. Lynch, can you state to the Court the cost price of the furniture involved in this action? A. The cost price was $322.79.

"Q. What was the reason for setting forth in this lease that the valuation was seven hundred and some odd dollars? A. The reason of that was, in Lease No. 1. I *sold* Hank, he was quite willing when I took it in, it went in a second mortgage covering the second furniture which I sold, and I gave him a high value."

(Italics ours.)

█ It will thus be seen that in the county court plaintiff took the position that his "Lease of Goods" agreement was a conditional sale contract, and we will confine him to that position in this court. *Glass & Bryant Mctle. Co. v. Bank,* 83 Colo. 193, 203, 265 Pac. 682; *Carlberg v. Willmott,* 87 Colo. 374, 376, 287 Pac. 863.

The contentions of the parties hereto may be thus summarized: Plaintiff claims to own the chattels and to be entitled to the immediate possession thereof, by virtue of the written agreement between himself and the tenant, which written agreement is designated by plaintiff as a conditional sale contract; while defendant claims the right of possession of the same chattels, by reason of its landlord's lien, created by the above quoted paragraph of its unacknowledged and unrecorded written lease with the tenant, and by its possession of the chattels, acquired prior to any asserted or known right or claim of plaintiff. Defendant's counsel contend that plaintiff's agreement, designated by him as a "Lease of Goods," is, in legal effect, a conditional sale agreement, and this plaintiff has conceded, as his evidence discloses; and therefore, defendant's counsel contend that this "Lease of Goods" agreement is, in legal effect, a secret lien or mortgage, which is constructively fraudulent as against their client, which they contend is a creditor with an en-

forceable lien, whose rights to the chattels attached while the same were in the possession of the tenant as a vendee thereof. Defendant's position is, further, that while plaintiff originally owned the chattels in question, he was estopped to claim title or right of possession thereof after he had clothed the tenant with the indicia of ownership, and after defendant had taken possession thereof under the latter's lien for office rent; all this occurring prior to any asserted right or claim of plaintiff.

So far as the record herein discloses, the tenant has made no complaint whatever about defendant's possession of the chattels or of the time and manner in which the same were acquired; and, assuming that the tenant might insist upon a strict compliance with the terms and provisions of its written lease with defendant, before possession was taken, and the same had not been done, that right cannot inure to the benefit of this plaintiff. Defendant's possession as against the plaintiff is legal only in event the plaintiff's course of dealing with the tenant, and the rights reserved to plaintiff by his "Lease of Goods" agreement, together with his contemporaneous oral agreement with the tenant, brings this transaction within the purview of our chattel mortgage act. In this action plaintiff must recover, if at all, upon the strength of his own, rather than upon the weakness of his adversary's, position. *Hall v. Johnson,* 21 Colo. 414, 418, 42 Pac. 660; *Kelly v. Lewis,* 38 Colo. 18, 22, 88 Pac. 388; *Buchanan v. Scandia Plow Co.,* 6 Colo. App. 34, 36, 39 Pac. 899; 23 R. C. L. 866; 54 C. J. 439; Shinn on Replevin, p. 34; Cobbey on Replevin (2d Ed.), pp. 413 et seq.; *Radetsky v. Gramm-Bernstein Co.,* 4 Fed. (2d) 965, 969.

Defendant unquestionably had a contract lien against the tenant's chattels as security for its rentals. Jones on Liens (3d Ed.), p. 510; 16 R. C. L. 977, and 36 C. J. 479. It may be conceded that the reservation of this lien in the written lease between defendant and the tenant amounted, in effect, to a chattel mortgage, to be gov-

erned and controlled by applicable provisions of the chattel mortgage act, as to recordation and acknowledgment; but, without either, it was valid as between the parties thereto (C. L. 1921, §5085), and when possession of the chattels was taken by defendant, prior to any asserted right or claim by plaintiff, defendant's possession was lawful against the rights of all others whose liens were not superior.

We have said that counsel for plaintiff contended that his "Lease of Goods" agreement was a conditional sale contract, and therefore the only question left for our determination is whether this conditional sale contract is within the purview and meaning of the provisions of our chattel mortgage act.

A conditional sale is one "which depends for its validity upon the fulfillment of some condition. The term is usually confined to sales in which the seller retains the title until the payment of the price." Bouvier's Law Dictionary (3d Ed.), p. 2984. See, also, 24 R. C. L. 440, and 55 C. J. 1192.

Section 5083, C. L. 1921, provides: "Except as hereinafter provided, no mortgage of personal property shall be valid against the rights and interests of any third person or persons unless possession of such property be delivered to and remain with the mortgagee, or the mortgage be acknowledged and certified, and filed or recorded as provided in this act."

Section 5084, C. L. 1921, provides for acknowledgment of chattel mortgages and gives the substantial form thereof.

Section 5085, C. L. 1921, provides that every chattel mortgage shall be valid as between the parties thereto until the payment of the indebtedness or until barred by the statute of limitations.

Section 5086 provides that every person who buys or acquires an interest in personal property which is mortgaged, and which mortgage is valid between the parties thereto, and of which the purchaser has knowledge, shall

400

be considered to have bought or acquired his interest subject to said mortgage, the same as if the mortgage had been filed or recorded according to the provisions of the chattel mortgage act.

Section 5099, C. L. 1921, provides: "Except as provided in section 5, above, the provisions of this act shall extend to all bills of sale, deeds of trust and other conveyances of personal property intended by the parties to have the effect of a mortgage or lien upon such property."

Section 5113, C. L. 1921, provides: "Every sale made by a vendor of goods and chattels in his possession or under his control, and every assignment of goods and chattels, unless the same be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the things sold or assigned, shall be presumed to be fraudulent and void, as against the creditors of the vendor, or the creditors of the person making such assignment, or subsequent purchasers in good faith, and this presumption shall be conclusive."

■ We are led to inquire, at the outset, why it was that plaintiff had prepared for his use and actually used in his business transactions exhibit A, in which it was expressly provided that "No agreement of sale of said goods is implied, nor shall a sale or purchase be deemed valid without a written receipt from said C. L. Patterson Office Equipment Co. therefor," while at the identical time that this exhibit A was being signed by the parties thereto, both plaintiff and his agent and salesman, Lynch, admit that they agreed with the tenant that, when the initial payment of $300 was paid, and $56 per month for eight months thereafter had been paid, a bill of sale to the equipment would be delivered to the tenant and the title would then pass. So far as we are advised, there is no statute in effect in this state which requires the recording of exhibit A; and yet, shortly after its execution, it was filed for record. Why was this done, if plaintiff intended the transaction as a bona fide lease rather

than an attempt upon his part to avoid the provisions of the Chattel Mortgage Act? Exhibit A, together with the admitted contemporaneous oral agreement between plaintiff's agent and the tenant, constituted a single transaction and an enforceable contract, as between themselves. It is rather significant that plaintiff's agent considered exhibit A a chattel mortgage rather than a lease or conditional sale, because he testified that the price of the equipment, fixed in exhibit A, was exorbitantly high and purposely thus fixed, so that the Investors Bond & Mortgage Company might place a *second mortgage* thereon, which was subsequently done. We have held that "The practical interpretation given to their contracts by the parties to them while they are engaged in their performance, and before any controversy has arisen concerning them, is one of the best indications of their true intent, and courts that adopt and enforce such a construction are not likely to commit serious error." *Cohen v. Clayton Co.*, 86 Colo. 270, 275, 281 Pac. 111. It must be conceded that exhibit A was a disguise for the real transaction between the parties; in form, it was a lease; in reality, a clumsy attempt to avoid direct stautory provisions and to circumvent the decisions of this court.

We should remember that both plaintiff and his agent and salesman, Lynch, repeatedly referred to the transaction with the Investors Bond & Mortgage Company as a "sale," and, when we consider the initial payment of $300 before the equipment was placed in the tenant's possession, and the monthly payments of $56 for a period of eight months, with no provision for any payments thereafter, we must conclude that the transaction was a sale. The terms of exhibit A are susceptible of no other construction, for it contains provisions utterly inconsistent with the idea of a lease, i. e., "That I make a payment of $300 and each succeeding month hereafter a payment of $56 until $748 is paid," and "That I will not sell or attempt to sell or dispose of any of said goods at the premises, No. .... now occupied by

me (removal from fire or danger excepted), and not remove them therefrom without the consent of C. L. Patterson Office Equipment Co." In *Coors v. Reagan,* 44 Colo. 126, 131, 96 Pac. 966, the following, from 6 A. & E. Enc. of Law (2d Ed.) 447, is quoted with approval: "If it appears from the face of the contract that the transaction is in fact a sale, and not a renting, it is immaterial what name the parties choose to give it." And in Williston on Sales (2d Ed.), 780, we find: "Apart from statutes courts have disregarded the form of the transaction and have held that where payment of so-called rent nearly or quite pays the price of the goods the bargain is conditional sale and subject to the rules governing that kind of transaction."

It may be said that the term "conditional sale" is used rather loosely in some of our opinions, and that frequently, where the purchaser had made an unconditional promise to pay the purchase price, we have used the term "conditional sale" when, as a matter of fact and law, the proper term would have been "absolute sale." Whatever the state of our earlier decisions, they are all set at rest by our opinion in *Coors v. Reagan,* 44 Colo. 126, 96 Pac. 966, which construes a contract so similar to the one in the instant case as to defy distinction. In the Coors-Reagan case, supra, practically all of our former decisions were reviewed; and if, for the sake of argument, the distinctions between absolute and conditional sales were not properly considered, then the Coors-Reagan case was one of first impression herein, and since then has never been overruled, but has been followed. The facts in the Coors-Reagan case, supra, as we find from the original record therein, are substantially: The instrument hereinafter discussed was denominated a "contract" and was entered into between Coors and one Sholz, who was about to engage in the saloon business in Victor, Colorado. Coors, who was designated in the contract as party of the first part, was the owner of a leasehold interest in certain lots, upon which he had

erected a building costing about \$3,600, and which building he had equipped with saloon fixtures costing about \$1,000, all of which Sholz, who was designated as second party, desired to acquire. The contract provided: "Whereas, the said party of the second part is desirous * * * of becoming the owner of said saloon fixtures, when fully paid for, now, therefore, in consideration of the premises, it is agreed by and between said parties as follows: That said second party shall have the right to the use and occupation of said premises and fixtures from the 15th day of February, A. D. 1900, to the 24th day of November, A. D. 1906, on the following terms and conditions, viz.: He shall pay to said party of the first part the sum of one hundred and twenty-five dollars (\$125) per month in advance for the first three (3) months from this date; and afterward the sum of one hundred and fifty dollars (\$150) per month in advance for each and every succeeding month, until the sum total of said payments (after deducting fifty-five dollars (\$55) per month as ground rent) shall equal the cost of said saloon fixtures, and the full cost and expense of the building erected on said premises by said party of the first part as aforesaid, * * * at which time said party of the second part shall be deemed the owner of said saloon fixtures, * * *." There was no obligation upon the part of second party to pay anything whatever, unless he desired to continue the use and occupancy of the premises and saloon fixtures. Almost two years after the contract was dated, and while Sholz was in possession of the premises and the saloon fixtures, certain creditors began an attachment action which resulted in Reagan, the defendant in error, taking possession of the saloon fixtures, which Coors tried to repossess by an action in replevin. The creditors of Sholz were without actual or constructive notice of any claims whatever of Coors, and counsel for Coors contended that the contract was a lease and not a conditional sale, and even though the contract be held to be a conditional sale, the judgment against him should

be reversed, *because the law of conditional sales is not settled in this state.* From the original record in this case, we find that in its judgment, the trial court found that "the transaction between the plaintiff, A. Coors, and Arthur O. Sholz, defendant in the attachment proceedings, as evidenced by the contract in evidence herein, *constituted what is denominated a conditional sale of the property in controversy* * * *."

The trial court found in favor of Reagan, the constable, who had attached the saloon fixtures; and, while it is not definitely mentioned in its findings, must have held that conditional sale contracts must be recorded, as are chattel mortgages, in order to be valid as to creditors. This court, in determining the Coors-Reagan case, supra, cited *George v. Tufts,* 5 Colo. 162, 165, and quoted with approval the following language which was considered applicable to the case at bar: "Secret liens, which treat the vendor of personal property who has delivered possession of it to the purchaser as the owner until the payment of the purchase-money, cannot be maintained. They are constructively fraudulent as to creditors, and the property, so far as their rights are concerned, is considered as belonging to the purchaser holding the possession." And then follows a review of most of the previous Colorado cases where the term "conditional sale" is used. Whatever may have been the law prior to the Coors-Reagan case, supra, that is set at rest by this decision, which has been followed and approved since the announcement thereof. It should be further observed, in this connection, that, in the Coors-Reagan case, our court said: "Our conclusion is that, under the facts of this case and the established law of this state applicable to conditional sales, the judgment of the court below was right and will be affirmed." Unless the facts in the Coors-Reagan case, supra, are distinguishable from the instant case, and we hold that they are not, the trial court herein incorrectly held for plaintiff. This construction of the opinion in the Coors-Reagan case, supra, finds support

in the following: "In Colorado (1) the rule is that conditional sales, as against third persons having no notice thereof and who are injuriously affected thereby, must be treated as absolute sales (Turnbull v. Cole, 70 Colo. 364, 201 P. 887, 25 A. L. R. 1149; Clark v. Bright, 30 Colo. 199, 69 P. 506; Jones v. Clark, 20 Colo. 353, 38 P. 371; Andrews v. Colorado Sav. Bank, 20 Colo. 313, 36 P. 902, 46 Am. S. R. 291; George v. Tufts, 5 Colo. 162; Puzzle Min., etc., Co. v. Morse Bros. Mach., etc., Co., 24 Colo. A. 74, 131 P. 791; Tufts v. Beach, 8 Colo. A. 33, 44 P. 771; Weber v. Diebold Safe, etc., Co., 2 Colo. A. 68, 29 P. 747), (2) the view being taken that private transactions of this character are not favored and that they are opposed to public policy (Coors v. Reagan, 44 Colo. 126, 96 P. 966). (3) A party who by his acts places another in an ostensible possession and ownership should be denied the right to establish such ownership. Coors v. Reagan, supra; Weber v. Diebold Safe, etc., Co., supra. (4) On the other hand, a conditional sale is valid as against third persons having notice of the condition. Jones v. Clark, supra [overr George v. Tufts, supra]; Gerow v. Castello, 11 Colo. 560, 19 P. 505, 7 Am. S. R. 260." Note 15, 55 C. J. 1233, 1234. In note 30, 55 C. J. 1235, we find the resumé of Colorado Law, as expressed in the Coors-Reagan case, supra, to be: (1) That conditional sales are void as against third parties without notice and who are injuriously affected. (2) This applies to creditors without notice of the reservation of title. (3) Conditional sales are valid as to those with notice and who did not extend credit in reliance upon ownership and possession of the purchaser. (4) And to effectually protect his rights; where the conditional sale contract is rescinded, the seller must take and keep actual possession of the personalty. In this resumé, reliance is placed chiefly upon our decision in Coors-Reagan, supra. In the Coors-Reagan case, supra, as in the instant case, no ordinary leasing of the equipment at a fixed rental was contemplated by the

parties, but the retention of title by plaintiff was intended as a mere security for the payment of the purchase money. In *Burroughs Adding Mach. Co. v. Bogdon,* 9 Fed. (2d) 54, we find: "The statutes of Colorado (Session Laws 1917, c. 43, §17) provide that no conveyance 'of personal property intended by the parties to have the effect of a mortgage or lien upon such property' shall be valid against third persons unless possession be retained by the mortgagee or seller or the instrument be filed for record. * * * Therefore, if the instrument here involved is not a lease but is one having the effect of a mortgage or a lien, within the meaning of the state statute, it is void as against the trustee, because neither possession was retained nor retaken by the mortgagee nor was the instrument filed for record at the time the bankruptcy petition was filed and such possession came to the trustee. If the contract here is a conditional sale, then it had, under the Colorado decisions (which govern in this character of question [citing cases]) the effect of a mortgage or lien within the meaning of the above state statute (Turnbull v. Cole, 70 Colo. 364, 201 P. 887, 25 A. L. R. 1149; Coors v. Reagan, 44 Colo. 126, 132, 96 P. 966; Andrews v. Colo. Savings Bank, 20 Colo. 313, 36 P. 902, 46 Am. St. Rep. 291; George v. Tufts, 5 Colo. 162; also see Weber v. Diebold S. & L. Co., 2 Colo. App. 68, 29 P. 747). Therefore, the sole question presented by this petition to revise is whether this instrument was a lease or was a contract of conditional sale." * * *

"The whole instrument shows a careful, studied attempt to give it the form and appearance of a lease; but the obvious purpose and the natural effect thereof is to consummate a conditional sale. We think the referee and the trial court properly defined the transaction to be such and correctly applied the law to such character of transaction."

It is thus obvious that the United States circuit court of appeals interpreted our holding in the Coors-Reagan

case as requiring the recordation of a conditional sale contract as the same came within the purview and meaning of our chattel mortgage act, and without a compliance with the provisions of our chattel mortgage act, the same was void as to third parties without notice. In the later case of *Farmers' State Bank v. Benston,* 29 Fed. (2d) 902, this same construction was followed. Since April, 1908, our decision in the Coors-Reagan case, supra, has been adhered to, and our construction has been followed by the United States circuit court of appeals in this circuit since October, 1925. It is also worthy of note that our decision in the Coors-Reagan case, supra, has never been modified, distinguished or overruled in this jurisdiction, and that no case involving the exact question determined in the Coors-Reagan case, supra, has again been before this court until now. It would therefore seem that the rule of stare decisis should be invoked, and we therefore adhere to our former decision.

Our conclusion is that exhibit A is a conditional sale contract; that it was intended by the parties thereto "to have the effect of a mortgage or lien upon such property," and therefore, to be valid as to creditors, must be acknowledged and recorded or filed for record as provided in our chattel mortgage act, or possession of the chattels taken by the seller, prior to the time when the rights of third parties accrued, or possession of the chattels must be retained by the seller, failing which, it was void as to the rights of a creditor who acquired possession of the chattels under a landlord's lien prior to the possession of the seller under the conditional sales contract.

The judgment is therefore reversed and the cause remanded to the county court, with instructions to vacate and set aside its judgment herein, and enter judgment for the defendant.

Mr. Justice Butler, Mr. Justice Moore and Mr. Justice Hilliard dissent.

Mr. Justice Butler, dissenting.

Because the decision and the reasons assigned therefor depart from what seems to me to be sound legal principle, it is impossible for me to concur therein. The far-reaching effect of the decision justifies, indeed calls for, a statement of the reasons for dissent. There are two reasons. They will be stated and discussed in their order.

1.  Confusion in terminology, unfortunately occurring in some of our opinions, has produced a confusion of ideas, and that in its turn, has resulted, it is submitted, in an erroneous construction of our statute concerning chattel mortgages.

Under its contract with Patterson, the Bond and Mortgage Company was not under an absolute obligation to pay the purchase price. It had an option to purchase the furniture, but it was under no obligation to do so. In *Gerow v. Castello,* 11 Colo. 560, 19 Pac. 505, we so construed a similar contract. See also *Coors v. Reagan,* 44 Colo. 126, 96 Pac. 966.

The provision of the present chattel mortgage statute (C. L., §5099), upon which the court bases its decision, provides: ''Except as provided in section 5, above, the provisions of this act shall extend to all bills of sale, deeds of trust and other conveyances of personal property intended by the parties to have the effect of a mortgage or lien upon such property.'' The only purpose of a mortgage or other lien is to secure some obligation; for example, the payment of a sum of money that the mortgagor or the creator of the lien is under obligation to pay. Where there is no such obligation, there can be no mortgage or lien. Nor can the parties intend that an instrument shall have the effect of a mortgage or lien unless there is some obligation to secure. If an owner of personal property gives a bill of sale thereof to secure the payment of a sum of money that he is under obligation to pay, it may well be said, in the language of the statute, that the bill of sale is ''intended by the parties to have the effect of a mortgage.'' By virtue of section

281, Code of Civil Procedure, such is the case with reference to deeds of real estate. A deed of trust or other conveyance of personal property given by the owner to secure the payment of money he is under obligation to pay comes within the terms of the chattel mortgage act. So, also, where personal property is sold by the owner under a contract whereby the purchaser is under an unconditional obligation to pay the purchase price, and the owner reserves title in himself to secure the full payment of the purchase price, the transaction is held to be the same as though title had passed to the purchaser and he had given a chattel mortgage to secure the payment of the purchase price, and in such case the contract must be recorded as required by the chattel mortgage act. Such are the transactions intended by the Legislature to come within the provisions of the statute. To hold that a contract, such as the one before us, whereby the owner of personal property gives to another a mere option to purchase is, in effect, a mortgage, or that the parties intend it as such, does violence alike to the letter and the spirit of the statute, and, it is most respectfully submitted, is contrary to reason and authority. In *Andrews & Co. v. Savings Bank,* 20 Colo. 313, 36 Pac. 902, we quoted with approval the following from the opinion in *Heryford v. Davis,* 102 U. S. 235: "This giving the property as a security for the payment of a debt is the very essence of a mortgage, which has no existence in a case of conditional sale." A mortgage without a debt or other obligation to support it is a legal solecism, or, as the Alabama Supreme Court terms it, a "myth in our system of jurisprudence." *Bell v. Shiver,* 181 Ala. 303, 61 So. 881; *Carroll v. Tomlinson,* 192 Ill. 398, 401, 61 N. E. 484; *Weltner v. Thurmond,* 17 Wyo. 268, 98 Pac. 590; *Bobb v. Wolff,* 148 Mo. 335, 49 S. W. 996.

Before confusion arose by reason of the loose and inaccurate use by this court of the term "conditional sale," the court recognized as sound, and enforced, the distinction just pointed out. The present chattel mortgage act

succeeded one containing a provision substantially the same as the one quoted above from the present statute. It provided: "The provisions of this act shall be deemed to extend to all such bills of sale, deeds of trust, and other conveyances of personal property, as shall have the effect of a mortgage or lien upon such property." S. L. 1862, p. 90, §7; R. S. 1868, p. 104, §7; G. L. 1877, p. 123, §7 (130); G. S. 1883, p. 160, §169; R. S. 1908, p. 288, §521. We have held repeatedly that where there is no unconditional promise to pay the purchase price, but such payment is optional, the contract is one of conditional sale only and not a chattel mortgage or a substitute for one; that the chattel mortgage act has no application, and that the contract need not be recorded; but that a contract that in express terms imposes upon the purchaser an unconditional liability to pay the purchase price is one of absolute, not conditional, sale; and that where such a contract reserves title in the seller until payment of the purchase price, it amounts to the reservation of a lien on the property to secure the payment of the purchase price, and, in effect, is a chattel mortgage within the meaning of the chattel mortgage act and must be recorded as such. *Gerow v. Castello,* 11 Colo. 560, 19 Pac. 505; *Andrews & Co. v. Colorado Savings Bank,* 20 Colo. 313, 36 Pac. 902; *Clark v. Bright,* 30 Colo. 199, 69 Pac. 506; *Turnbull v. Cole,* 70 Colo. 364, 201 Pac. 887; *Anglo-American Mill Co. v. First National Bank,* 76 Colo. 57, 230 Pac. 118. And see *Weber v. Diebold Safe & L. Co.,* 2 Colo. App. 68, 29 Pac. 747; *First Congregational Church v. Grand Rapids School Furniture Co.,* 15 Colo. App. 46, 60 Pac. 948. In *George v. Tufts,* 5 Colo. 162, counsel stipulated that the sale was a "conditional sale," but the fact was that it was an absolute sale, the purchaser's unconditional promise to pay the price being evidenced by his promissory notes. The court held that in order to preserve his lien, Tuft should have recorded the contract. Notwithstanding counsel's mistake in calling the transaction a "conditional sale," the court held, in effect, that

it was an absolute sale with the reservation of title to secure the payment of the promissory notes, and correctly applied the law applicable thereto.

In *Andrews v. Colorado Savings Bank,* 20 Colo. 313, 36 Pac. 902; *Jones v. Clark,* 20 Colo. 353; 38 Pac. 371, *Weber v. Diebold Safe & L. Co.,* 2 Colo. App. 68, 29 Pac. 747, and *Turnbull v. Cole,* 70 Colo. 364, 201 Pac. 887, the transactions constituted absolute sales, with the reservation of a lien to secure the payment of the purchase price, which the purchaser was unconditionally liable to pay. Though in each case the court loosely applied the term "conditional sale" to the transaction, it correctly applied the law relating to absolute sales. The decision was right; the nomenclature, wrong and misleading.

The majority opinion admits that the term "conditional sale" has been used rather loosely in some of our opinions, and that frequently where the purchaser had made an unconditional promise to pay the purchase price we have used the term "conditional sale," when, as a matter of fact and law, the proper term would have been "absolute sale;" but declares that all this has been set at rest by the opinion in *Coors v. Reagan,* 44 Colo. 126, 96 Pac. 966. In that case the question principally discussed by counsel and by the court was whether the contract constituted a lease or a conditional sale. The court correctly held that it was not a lease. In that case, as is said in the majority opinion in this case, "There was no obligation upon the part of second party to pay anything whatever unless he desired to continue the use and occupancy of the premises and saloon fixtures." The court there correctly held that the transaction constituted a conditional sale. So far, the decision was in harmony with the uniform decisions of this court and our Court of Appeals. However, misled by the repeated misuse, in some of our former opinions, of the term "conditional sale," the court held, contrary to every decision of this court and of the Court of Appeals, that such contracts, in effect, are mortgages and must be recorded as such.

Curiously enough, not one of the cases cited in support of that proposition sustains it. They all hold to the contrary; that is to say, that the contracts that must be recorded are those only that impose an unconditional obligation to pay. Some of the opinions, as we have seen, erroneously called such contracts contracts of conditional sale; hence the mistake, in Coors v. Reagan, of supposing that conditional sale contracts must be recorded. In the majority opinion in the present case, it is said that the Coors-Reagan case has never been reversed, but has been followed. True, it has not been reversed; but no such question has been presented. It is equally true that that case has never been followed by this court or by our Court of Appeals. On the contrary, in our latest case on the subject *(Anglo-American Mill Co. v. First National Bank,* 76 Colo. 57, 230 Pac. 118) we recognized the distinction theretofore drawn by this court between the two kinds of contracts; and held that where payment is optional, the contract is one of conditional sale, but that a contract imposing an unconditional liability to pay is an absolute, not a conditional sale, and must be recorded. In that case, we followed the cases decided *prior* to the Coors-Reagan case, quoting with approval from the opinion in *Andrews & Co. v. Colorado Savings Bank, supra,* and adding: "No option was given to the vendee as to whether or not he should pay, but he was absolutely bound to pay, * * * This transaction between buyer and seller was an absolute sale with the reservation of a secret lien thereon by the seller which made the written contracts a chattel mortgage under the law of this state and the decisions of this court in the Andrews and other cases. Not being recorded they were void as to third persons whose rights attached while the property remained in the possession of the mortgagor vendee." In the opinion, we took pains to make it clear that the reason why the contract must be recorded as a mortgage was that there was an unconditional obligation to pay. Obviously,

this was a repudiation of the decision inadvertently and unfortunately rendered in the Coors-Reagan case.

As this court itself, in the Coors-Reagan case, was misled by our misuse, on former occasions, of the term "conditional sale," it is not surprising that another court and also a text writer have been misled in a similar manner in attempting to state the law as announced by this court. For example, in *Burroughs Adding Machine Co. v. Bogdon,* 9 Fed. (2d) 54, cited in the majority opinion, the court said: "If the contract here is a conditional sale, then it had, under the Colorado decisions (which govern in this character of question, Bryant v. Swofford, 214 U. S. 279 * * *) the effect of a mortgage or lien within the meaning of the above state statute (Turnbull v. Cole, 70 Colo. 364 * * *; Coors v. Reagan, 44 Colo. 126 * * *; Andrews v. Colo. Savings Bank, 20 Colo. 313 * * *; George v. Tufts, 5 Colo. 162; also see Weber v. Diebold S. & L. Co., 2 Colo. App. 68 * * *)." In each of those Colorado cases, excepting only the Coors-Reagan case, the transaction was not a conditional sale at all, but an absolute sale with the reservation of title to secure payment of the purchase price, which the purchaser unconditionally promised to pay. It was, in effect, a chattel mortgage. In each, the opinion mistakenly called the transaction a "conditional sale."

In the present case, the court, after quoting from the testimony given by Patterson's salesman, in which he referred to the contract as a "sale" and also spoke of another transaction as a "second mortgage," remarks: "It will thus be seen that in the county court, plaintiff took the position that his 'Lease of Goods' agreement was a conditional sale contract, and we will confine him to that position in this court." Under our decisions, as we have seen, that is exactly what it was, but the majority opinion here gives the term a different meaning. With reference to the contract heading, "Lease of Goods," and the declarations in the contract that the goods were "leased" and that, "No agreement of sale of said goods is implied,"

the court cited authority for the proposition—a sound one—that it is immaterial what name the parties choose to give the contract; that the terms of the contract control. The legal character of an instrument, of course, is to be determined from the terms, conditions, and operation of the instrument itself, and not from the oral opinions or declarations of the parties as to its legal character. Indeed, if the law were otherwise, the contract involved in this action would be a lease, for the contract calls it that.

The fact that the Bond and Mortgage Company was put in possession of the furniture did not estop Patterson to assert his title. Its possession was as conditional purchaser, not as owner. In *Clay, Robinson & Co. v. Martinez,* 74 Colo. 10, 218 Pac. 903, it was argued that since the plaintiffs put Jordan in the ostensible position of owner, they were estopped to deny his ownership. We said: ''The answer is that they put him in the position of bailee, not owner. Control, apparently as owner by reason of possession, is an incident of every bailment, yet every one deals with a bailee at his peril * * *. No indicium of ownership was conferred in the present case except possession.'' Possession under a conditional sale, such as the one involved in this action, stands on precisely the same footing. ''Possession under a conditional sale, with the right of the vendee to use the property as his own, does not clothe the latter with such indicia of ownership as to estop the owner from asserting title as against a bona fide purchaser from the conditional vendee. Sanders v. Keber, 28 Ohio St. 630. The court says that the converse of this rule would place goods and chattels on the same ground as commercial paper before due, instead of requiring the buyer to rely on the implied warranty of title by the vendor.'' 25 L. R. A. (N. S.), 772, note. And see *Simpson v. Shackelford,* 49 Ark. 63, 4 S. W. 165. See also cases collected in note, 25 L. R. A. (N. S.), 770 et seq. Such is the law, even where contracts are made or money is paid or loaned on the

strength of ostensible ownership by virtue of possession. Much less can estoppel be relied upon in the present case, for the lease was given before the furniture was in the office room, or otherwise in the Bond and Mortgage Company's possession; and there is no pretense, and there could be none, that the lease was given in reliance upon ostensible ownership of this furniture by the Bond and Mortgage Company.

Again, the Bond and Mortgage Company could not transfer to the Building Company, or encumber, a title that it did not have. In the purchase of personal property the rule of caveat emptor ordinarily applies. Thus, a lessee of chattels cannot, as against the lessor, pass title by sale thereof even to a bona fide purchaser without notice of the lessor's title. *Singer Manufacturing Co. v. Converse,* 23 Colo. 247, 47 Pac. 264. Nor can a bailee, as against his bailor, even though the bailee also has an option to purchase the property. *Clay, Robinson & Co. v. Martinez,* 74 Colo. 10, 218 Pac. 903. Nor can a pledgee, as against the pledgor. *Newton v. Cardwell Blue Print and Supply Co.,* 41 Colo. 492, 92 Pac. 914. Nor can an agent, as against his principal. *Morsch v. Lessig,* 45 Colo. 168, 100 Pac. 431. Nor can one to whom property is loaned, as against the lender. 25 L. R. A. (N. S.), 778, note. Nor can a mortgagee in possession under an unrecorded mortgage, as against the mortgagor. 25 L. R. A. (N. S.), 785. The same reason exists and the same rule applies in the case of conditional sales. The lessee, the pledgee, the bailee and the conditional purchaser all have possession of property, and the agent and the mortgagee in the cases supposed also have possession of property, but they do not have title and cannot transfer it. In *Couse v. Tregent,* 11 Mich. 65, the court says: "What right has a purchaser of chattels from a conditional purchaser, as against the absolute owner, that he would not have if the purchase were from a bailee? The possession is the same, and the ownership the same substantially; certainly the same opportunity for the perpetration of

fraud exists in the one case as in the other.'' And in *Homans v. Newton,* 4 Fed. 880, the court said: ''If I lend a horse to my neighbor, he may be able to deceive an innocent purchaser. The cases are precisely parallel, for one who has agreed for a conditional purchase has no more apparent possession than a borrower. The common law, as maintained in a great majority of the states, undoubtedly is that in the absence of actual fraud, or laches, on the part of the true owner, the possessor of a chattel, in a case of this kind, can only dispose of his own title.'' In a note in 25 L. R. A. (N. S.), 763, it is said: ''In a few places, the rule is that the owner will be safe when he has made a bailment, but not when he has let a conditional vendee have the chattel; but the view taken almost everywhere is that the conditional vendor, in the absence of statute, hazards nothing, as against a third person, by parting with possession.'' In *W. F. Zimmerman Lumber Co. v. Elder* (Miss.), 29 So. 466, a conditional seller was held entitled to recover the property from one who purchased it from the buyer's landlord, who had held it as security for rent. In 24 R. C. L., 455, discussing conditional sales, the rule is stated in these words: ''In the absence of statutory provisions to the contrary, it is generally held that the reservation of title in the seller is valid against levying creditors of the buyer, and even as against bona fide purchasers for value without notice of the buyer's want of title. This is in pursuance of the general rule that one in possession of a chattel as bailee or the like can transfer to a third person no greater right or interest than he himself possesses, * * *.'' And see 25 L. R. A. (N. S.), 760, et seq., 782, et seq.

If it is desirable to require the recording of conditional sale contracts, such as the one involved in this proceeding, it would be better to accomplish the purpose by act of the Legislature, as has been done in some states, rather than for a court to resort to the expedient of creating such an abnormality as a mortgage securing the

performance of an obligation that does not exist—securing the payment of a sum of money that no one has promised to pay. Such abnormality was injected into our jurisprudence by the Coors-Reagan decision. If it was not effectually expelled, as I believe it was, by the decision in *Anglo-American Mill Co. v. First National Bank, supra,* it should be eliminated now.

2. Desiring to engage in business in the United States National Bank building, the Bond and Mortgage Company leased from the Building Company an office room in that building. In order to do business there, it was necessary, of course, to equip the room with office furniture. After securing the lease, the Bond and Mortgage Company arranged with Patterson for the use of the furniture described in their contract, made at the time, and the furniture was thereupon delivered to the Bond and Mortgage Company and placed in the leased room. The Building Company says that when the furniture was placed in the room, it immediately, by virtue of the lease theretofore executed, became subject to the lien for rent, not only as against the Bond and Mortgage Company, but also as against Patterson. That is a mistake. Even if the Bond and Mortgage Company had obligated itself absolutely to pay the price and actually had given Patterson a chattel mortgage to secure the payment thereof, the Building Company would not be entitled to the possession of the furniture as against Patterson.

The lease contemplated the future installation in the vacant office room of furniture owned by the tenant, and that when the tenant's furniture was placed in the room a lien thereon should attach to secure the payment of rent. The transaction is analogous to the case of a mortgage or other lien covering after-acquired property. *Robinson v. Wright,* 90 Colo. 417, 9 P. (2d) 618. If the Patterson contract constituted, in effect, a chattel mortgage, it was a purchase-money mortgage, and the lien thereof was created contemporaneously with the sale of the furniture and as part of the same transaction. When

the furniture was placed in the office room, the Building Company's lien attached thereto, subject, however, to the lien of the purchase-money mortgage theretofore given Patterson. *Robinson v. Wright, supra; Emery v. Ward,* 68 Colo. 373, 191 Pac. 99; *Indian Creek Coal Mining Co. v. Home Savings & Merchants' Bank,* 80 Colo. 96, 249 Pac. 499; *United States v. New Orleans & O. Railroad Co.,* 12 Wall. 362; *Fosdick v. Schall,* 99 U. S. 235; *Harris v. Youngstown Bridge Co.,* 33 C. C. A. 69, 90 Fed. 322; *Frank v. D. & R. G. R. Co.,* 23 Fed. 123; *Hammel v. First National Bank,* 129 Mich. 176, 88 N. W. 397. And the fact that the contract was not recorded does not affect the result; registry laws do not apply in such a case. *Robinson v. Wright, supra; United States v. New Orleans & O. Railroad Co., supra; Harris v. Youngstown Bridge Co., supra.*

Reason and precedent, I submit, require the affirmance of the judgment.

Mr. Justice Moore and Mr. Justice Hilliard authorize me to say that they concur in this opinion.